# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MICHAEL B. ELGIN                )
         **Plaintiff,**            )
                                   )
      v.                             )
                                   )
HENRY M. PAULSON, JR., individually and in )
his official capacity as Secretary of the       )
Treasury, and the UNITED STATES OF      )
AMERICA DEPARTMENT OF THE TREASURY )
         **Defendants**             )

## COMPLAINT
### Introduction

1.     Michael Elgin, a 42-year-old man with seventeen years of exemplary service with the Internal Revenue Service, was fired solely because he had not registered with the Selective Service System when he was eighteen years old. In this action, Mr. Elgin challenges the constitutionality of the federal law that called for his firing. The plaintiff alleges that 5 U.S.C. § 3328, a statute that forever bars men who failed to register with the Selective Service System within thirty days of their eighteenth birthday from employment with any Executive branch agency, constitutes a Bill of Attainder in violation of Art. I, § 9, cl. 3 of the United States Constitution. Further, this complaint alleges that the Military Selective Service Act requirement that men, but not women, must register with the Selective Service System violates the Equal Protection guarantee of the Fourteenth Amendment to the United States Constitution on its face and as applied to Mr. Elgin. Simply put, if Mr. Elgin were a woman and not a man he would have retained his federal employment. The requirement that young men, but not

young women must register on their eighteenth birthday exposes men, but not

women, to serious penalties and punishments throughout their lifetimes, as

exemplified by Mr. Elgin's termination from the IRS when he was 41 years old.

While this gender-based discrimination may once have been justified by the

exclusion of women from large segments of military service, this justification has

disappeared as more than 200,000 women presently serve in virtually all

positions in the military.

2.    The plaintiff seeks a declaratory judgment that 5 U.S.C. § 3328's prohibition

against federal employment constitutes a Bill of Attainder. The plaintiff also

seeks a declaratory judgment that the Military Selective Service Act requirement

that men, but not women, must register with the Selective Service System violates

the Equal Protection Clause of the Fourteenth Amendment and the Due Process

Clause of the Fifth Amendment. The plaintiff further seeks injunctive relief

reinstating him to his position with the IRS.

### Jurisdiction and Venue

3.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28

U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1346 (U.S. defendant). Claims are

asserted pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202,

and the Administrative Procedures Act, 5 U.S.C. § 702. This Court further has

jurisdiction to review a constitutional violation caused by a federal employee

pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of

Narcotics*, 403 U.S. 388 (1971).

4.   Mr. Elgin appealed his dismissal to the Merit Systems Protection Board, alleging both that his dismissal violated the constitutional prohibition against Bills of Attainder and that the dismissal discriminated against him on account of his gender. The MSPB ruled that it lacked jurisdiction to hear his appeal since the termination was based on a statutory bar to federal employment. Because the MSPB appeal constituted a "mixed" claim, in that it included an allegation of illegal discrimination, this Court has jurisdiction to review this matter, pursuant to 5 U.S.C. § 7703(b)(2).

5.   The decision of the Merit Systems Protection Board became final on December 21, 2007.

6.   Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1402(a).

## Parties

7.   The plaintiff Michael Elgin is a male United States citizen and resident of the Commonwealth of Massachusetts. He is 42 years old.

8.   The Defendant Henry M. Paulson, Jr. is named in his official capacity as Secretary of the Treasury on all counts and is named individually on the claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Internal Revenue Service is a component of the Department of the Treasury.

9.   The defendant United States Department of the Treasury is subject to suit pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, and 5 USCS § 7703.

**Facts**
**<u>The Selective Service System</u>**

10.   The Selective Service System is an independent agency within the Executive

Branch of the federal government, established by 50 U.S.C. § 460. It is not a part

of the Defense Department.

11.   The Military Selective Service Act, 50 U.S.C. § 453, *et. seq*., requires all males

between the ages of 18 and 26 to register with the Selective Service System during

the 60-day period beginning 30 days before their eighteenth birthday.

12.   Men are barred from registering with the Selective Service after their twenty-

sixth birthday.

13.   It is a crime for a man to fail to register with the Selective Service System. The

punishment for failing to register within thirty days of a man's eighteenth

birthday is a fine of up to $10,000 and imprisonment for up to five years,

pursuant to 50 U.S.C. § 462. Men charged with this crime are entitled to a trial

and all substantive and procedural rights of those accused of crimes. Woman,

because they are not required to register, are not subject to this fine or

imprisonment.

14.   In addition to the criminal penalties for failing to register, men who fail to

register with the Selective Service System are ineligible for a host of federal

benefits, including federal student financial aid such as Pell grants and

guaranteed student loans, job training under the federal Workforce Investment

Act and U.S. citizenship for male immigrants. Women are not subject to these

disqualifications from participation in federal programs or employment.

15.     As applicable to the present action, men who fail to register with the Selective

Service System within thirty days of their eighteenth birthdays are barred from

employment with a federal Executive branch agency for the duration of their

lifetimes, pursuant to 5 U.S.C. § 3328.

16.     This statutory bar to federal employment was enacted in 1987. The sponsor of the

bill, Sen. Strom Thurmond, described the bar as a means of punishing

"unpatriotic" men, saying that "if an individual refuses to recognize any

responsibility to his country or to its citizens, and refuses to register with the

Selective Service as required by law, then that individual should be barred from

Federal civil service employment. It is really that simple. To permit such

individuals to enjoy the privileges and benefits of civil service positions is not

only unfair to taxpayers, it is unpatriotic."

17.     Although all men are required to register with the Selective Service System, no

persons have been drafted into the military since July 1, 1973, pursuant to 50

U.S.C. § 467. Neither the President nor the Director of the Selective Service

System has authority to institute a draft. Reinstitution of the military draft

requires an act of Congress and approval by the President.

### Facts Regarding Mr. Elgin

18.     At the time of his eighteenth birthday, Mr. Elgin was a struggling high school

student, living a hand-to-mouth existence after being ejected from his family

home by his father. He lived precariously, staying with friends and relatives and,

at times, living in his car. He was the father of a baby boy when he was fourteen

years old and he worked continuously through high school to meet his financial

and emotional responsibilities as a father. Despite these hurdles, Mr. Elgin was determined to support his son and to graduate from high school, which he managed to accomplish.

19.     Because of this tumultuous existence, Mr. Elgin was unaware of the law requiring young men to register with the Selective Service within thirty days of their eighteenth birthday. He did not ever register.

20.     Mr. Elgin was hired by the Internal Revenue Service in 1991 and initially worked as a low-level data transcriber in Andover, Massachusetts. The IRS conducted a routine security investigation when Mr. Elgin was hired and gave him a favorable determination. Since that time, he received repeated promotions to positions with increasingly greater responsibility. Throughout his career at the IRS he received glowing praise and evaluations and was an exemplary employee.

21.     As part of a routine background investigation when he was proposed for a further promotion in 2002, the IRS learned that Mr. Elgin had not registered with the Selective Service. The matter was forwarded to the federal Office of Personnel Management ("OPM"), as required by the applicable regulations.

22.     Despite his failure to register with Selective Service when he was 18 years old, in January 2007, the IRS found that Mr. Elgin had passed its background investigation and his security status was raised from "low risk" positions to "moderate risk" positions.

23.     OPM determined that Mr. Elgin's failure to register was willful and knowing and that he was ineligible for federal employment, pursuant to 5 U.S.C. § 3328. The

IRS requested that OPM reconsider and find that Mr. Elgin's failure to register was an inadvertent mistake. The IRS wrote to OPM that Mr. Elgin

> has an exemplary record with the IRS and is a valued and trusted employee whose loss would negatively impact his fellow employees, the employees he supports daily and management. Both Senators from Massachusetts have requested the IRS to issue an eligibility waiver that would allow Mr. Elgin to be retained as an employee of the IRS. The IRS joins in that request to OPM.

24.   Nonetheless, on February 22, 2007, OPM denied the IRS' request and confirmed its finding that Mr. Elgin was ineligible for Executive agency employment.

25.   On July 18, 2007, the IRS wrote to Mr. Elgin that because of the final decision by OPM concerning his ineligibility for employment, his employment would be terminated as of July 27, 2007.

26.   Mr. Elgin appealed his termination to the Merit Systems Protection Board on the grounds (1) that the statutory basis for his dismissal, 5 U.S.C. § 3328, constituted a Bill of Attainder and (2) that his termination discriminated against him on account of his gender. On November 16, 2007, the MSPB Administrative Judge allowed the IRS' motion to dismiss the appeal on the ground that because of the statutory bar to employment, the MSPB lacked jurisdiction to hear the appeal. The MSPB decision became final on December 21, 2007.

27.   Mr. Elgin's son, who was a baby when Mr. Elgin was in high school, served an eighteen-month tour of duty with the U.S. Army in Iraq.

## The Role of Women in the Military
## <u>Has Changed in Recent Years</u>

28.     All men between the ages of 18 and 26 residing in the United States are required

to register with the Selective Service System, regardless of their physical or

mental condition or their fitness for service in the military. The Selective Service

advises that a friend or relative help a disabled man complete the registration

form if he is unable to do so himself. Such disabled men are not eligible to serve

in the military. The registration requirement is without regard to men's actual

ability or eligibility to serve in the military in any capacity.

29.     Conversely, all women, no matter their fitness or ability to serve in the armed

forces, are excluded from registration.

30.     The requirement that men unfit for service must register with the Selective

Service and the prohibition against registration by women who are well qualified

to serve in the military serves no important governmental objective nor is this

distinction between men and women substantially related to the achievement of

any important governmental objective. This statutory scheme ignores the crucial

role that women play in today's military. Instead, the male-only registration

requirement is, as the Supreme Court commented in a similar context, based on

"overbroad generalizations about the talents, capacities, or preferences of

women."

31.     The role of women in the military has changed dramatically In recent years. For

example, virtually all positions in the Navy, the Coast Guard and the Air Force are

now open to women. Women serve on Navy combat ships and fly Navy and Air

Force combat aircraft. Women serve in 92 percent of occupations in the Army. Some 80 percent of military job titles are open to women. Women make up 15 percent of the armed forces and as high as 18 percent of lower enlisted ranks and junior officer ranks. More than 200,000 women presently serve in the United States military. The percentage of the armed forces represented by women has increased from 1.6 percent in 1973 to 8.4 percent in 1980 to 15 percent at present. In fact, the Department of Defense is the largest single employer of women in the country.

32.    All branches of the armed forces actively recruit women and seek to induce them to enlist voluntarily. All branches of the military have recruiting material specifically targeted at women emphasizing the benefits and opportunities for women in the military and the contributions women make to the armed forces. Women make up 20 percent of new recruits.

33.    Women attend all of the military service academies. In 2001, women were 15.9 percent of the graduating class of West Point, 17.8 percent of the graduating class of the Air Force Academy, 16.6 percent of the graduating class of the Naval Academy, and 25.4 percent of the graduating class of the Coast Guard Academy.

34.    Women have served more than 170,000 tours of duty in the current war in Iraq., constituting approximately one in seven of all military personnel deployed The percentage of women serving in Iraq is four times the percentage of women who served in the 1991 Persian Gulf war. For example, nearly one-fourth of all Army intelligence personnel are women. Despite statutory limits on women being assigned to front line combat positions, the Army has awarded thousands of

Combat Action Badges to women fighting in Iraq and Afghanistan. The Department of Defense states the purpose of the Combat Action Badge as providing "special recognition to Soldiers who personally engage the enemy, or are engaged by the enemy during combat operations." http://www.army.mil/symbols/combatbadges/Action.html. More than sixty-one women have been killed by hostile fire.

35.    A recent Rand Corporation study of the role of women in the military forces in Iraq concluded that women were actively involved in routine self-defense missions that included providing security for their own units, providing personal security for leadership, and, in some cases, providing security for other support units. In fact, this study, funded by the Department of Defense, concluded that insurgents were more likely to target the type of units to which women are assigned than the direct combat units to which women are not directly assigned.

36.    The Selective Service System acknowledges that if given the mission and additional funding, it is capable of registering and drafting women with its existing infrastructure.

37.    The military would be unable to perform its missions in Iraq and Afghanistan but for the women serving in those countries.

## COUNT ONE
## Bill of Attainder

Plaintiff realleges the foregoing paragraphs.

**38.** The prohibition against Executive agency employment for men who failed to register with Selective Service is a punishment imposed by Congress on men deemed disloyal and unwilling to defend the nation. Because the punishment is inflicted on men over age 26 who are legally barred from registering with the Selective Service, the statutory bar cannot serve to induce these men to comply with the registration requirement.

39. A bar to specific kinds of employment, such as the prohibition against Executive agency employment at issue, is the type of punishment historically imposed by bills of attainder and their kin, bills of pains and penalties.

40. The Military Selective Service Act, 50 U.S.C. § 451, permits registration only for men between the ages of 18 and 26. As a result, at the time the IRS first informed Mr. Elgin that he would be fired, he was legally incapable of registering with the Selective Service.

41. The punishment imposed by 5 U.S.C. § 3328, barring Mr. Elgin, among others, from Executive agency employment, was inflicted without trial or the right to trial.

42. The punishment imposed by 5 U.S.C. § 3328 is inflicted on an easily identifiable group of men born after December 31, 1959 who did not register with the Selective Service System. In fact, to facilitate the determination of whether a man falls within the group on whom the bar to employment is imposed, the Selective

Service System established an online query facility at which by entering a man's last name, Social Security number and date of birth, information is instantly provided as to whether or not he registered with Selective Service. That query service is online at https://www.sss.gov/RegVer/wfVerification.aspx. By means of this service it can be instantly determined whether a man falls within the group on which the statutory bar to employment is imposed.

43.   As a result of the above, the statutory bar to Executive agency employment imposed by 5 U.S.C. § 3328 is a Bill of Attainder, prohibited by Art. I, § 9, cl. 3 of the United States Constitution.

**COUNT TWO**
**Equal Protection Violation**

Plaintiff realleges the foregoing paragraphs.

44.   Were Mr. Elgin a female rather than a male, he would not have been terminated from employment with the IRS.

45.   While at the time of its enactment, the male-only registration requirement may have been justified by the limited and nonessential role played by women in the armed forces at that time, the role of women has changed dramatically in recent years. Because of the vital, crucial and essential tasks performed by women in today's military, there is no longer any logical or legal justification for limiting Selective Service registration to men. The present scheme in which men with physical and mental infirmities making them ineligible for military service are required to register, while physically fit and mentally capable women are barred

from registration neither serves important governmental objectives nor is substantially related to achievement of those objectives.

46.  The Military Selective Service Act, 50 U.S.C. § 453, *et. seq.*, requirement that only men must register with the Selective Service, and the prohibition against Executive agency employment imposed by 5 U.S.C. § 3328 for men, but not women, who fail to register violates the plaintiff's right to the Equal Protection of the laws under the Fifth and Fourteenth Amendments to the United States Constitution.

## RELIEF REQUESTED

WHEREFORE, plaintiff respectfully requests that this Court grant the following relief against the federal defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Administrative Procedures Act, 5 U.S.C. § 702, and 5 U.S.C. § 7703(b)(2), and against the individual defendant pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971):

1.  A declaratory judgment that 5 U.S.C. § 3328 constitutes a Bill of Attainder in violation of Art. I, § 9, cl. 3 of the United States Constitution.

2.  A declaratory judgment that 50 U.S.C. § 451, *et. seq.* and 5 U.S.C. § 3328 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as applied to the federal government by the Fifth Amendment to the United States Constitution, in that they place burdens and penalties on men that are not placed on women, in that they stigmatize women as ineligible for required service to their country in time of need, in that they require young men, but not young women, to

continuously report their residence to the government, and in that they distinguish between men and women based on archaic stereotypes and misconceptions, to the detriment of men and women and the national welfare.

3.    A preliminary injunction prohibiting the defendants from implementing or enforcing the provisions of 5 U.S.C. § 3328 and requiring the reinstatement of Mr. Elgin to his employment with the Internal Revenue Service.

4.    A permanent injunction prohibiting the defendants from implementing or enforcing the provisions of 5 U.S.C. § 3328 and requiring the reinstatement of Mr. Elgin to his employment with the Internal Revenue Service with full back pay and benefits.

4.    Attorneys' fees and costs and expenses pursuant to 42 U.S.C. § 1988 and 28 U.S.C. § 2412.

5.    Such other and further relief as this Court deems appropriate.

Michael Elgin, plaintiff,
By his attorneys,

/s/ Harvey A. Schwartz
Harvey A. Schwartz, BBO # 448080
Lori A. Jodoin, BBO # 655840
RODGERS, POWERS & SCHWARTZ
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 742-7010