## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MICHAEL B. ELGIN, AARON LAWSON,<br>HENRY TUCKER and CHRISTON COLBY<br>on behalf of themselves and similarly situated<br>men throughout the United States<br>    Plaintiffs,<br><br>    v.<br><br>GEORGE W. BUSH, individually and in his<br>official capacity as President of the United<br>States; HENRY M. PAULSON, JR., individually<br>and in his official capacity as Secretary of the<br>Treasury; DIRK KEMPTHORNE, individually<br>and in his official capacity as Secretary of the<br>Interior; UNITED STATES OF AMERICA;<br>UNITED STATES DEPARTMENT OF THE<br>TREASURY; and UNITED STATES<br>DEPARTMENT OF THE INTERIOR<br>    Defendants | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )    Civil Action No.<br>   07-2391DPW |

## FIRST AMENDED CLASS ACTION COMPLAINT

## Introduction

1.   In this civil action, four exemplary federal employees fired solely because they had failed to register with the Selective Service System many years earlier when they were eighteen years old challenge the constitutionality of the federal law that required their firings. They bring this action on behalf of themselves and hundreds of thousands of other men fired from or forever barred from federal employment. They allege that the statute at issue, 5 U.S.C. § 3328, constitutes a Bill of Attainder prohibited by Art. I, § 9, cl. 3 of the Constitution, and also that the requirement of the Military Selective Service Act, 50 U.S.C. § 453, *et. seq.*, that young men, but not women, must register is an anachronism that unconstitutionally discriminates on the basis of gender.

2.    Michael Elgin, a 42-year-old man with 17 years of service with the Internal Revenue Service, was fired solely because he had not registered with the Selective Service System when he was eighteen years old. Aaron Lawson, a 32-year-old employee of the Bureau of Land Management ("BLM"), was notified his employment is to be terminated because the Selective Service System has no record that he registered when he was 18 years old. Henry Tucker, a 37-year-old man who worked for the Federal Deposit Insurance Corporation for 17 years, was offered a transfer to the National Institute of Health but, when it was learned that he had not registered with the Selective Service System, the offer was withdrawn and his FDIC employment is now to be terminated. Christon Colby, a 32-year-old man with more than 5 years of exemplary service with the Internal Revenue Service, was fired solely because he had mistakenly failed to register with the Selective Service System.

3.    Simply put, the complaint alleges that if Mr. Elgin, Mr. Lawson, Mr. Tucker and Mr. Colby were woman and not men they would have retained their federal employment. The requirement that young men, but not young women must register on their eighteenth birthday exposes men, but not women, to serious penalties and punishments throughout their lifetimes. While this gender-based discrimination may once have been justified by the exclusion of women from large segments of military service, this justification has disappeared as more than 200,000 women presently serve in virtually all positions in the military.

4.    The plaintiffs seek class certification on behalf of all men who failed to register with the Selective Service System prior to their 26th birthdays and a declaratory

judgment that the 5 U.S.C. § 3328 prohibition against their federal employment constitutes a Bill of Attainder. The plaintiffs also seek a declaratory judgment that the Military Selective Service Act requirement that men, but not women, must register with the Selective Service System violates the Equal Protection Clause of the Fourteenth Amendment and the Due Process Clause of the Fifth Amendment. The plaintiffs further seek injunctive relief reinstating them and all class members dismissed from federal service to their positions with the federal government.

## JURISDICTION AND VENUE

5.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), and 28 U.S.C. § 1346 (U.S. defendant). Claims are asserted pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, and the Administrative Procedures Act, 5 U.S.C. § 702. This Court further has jurisdiction to review a constitutional violation caused by a federal employee pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

6.    Mr. Elgin appealed his dismissal to the Merit Systems Protection Board, alleging both that his dismissal violated the constitutional prohibition against Bills of Attainder and that the dismissal discriminated against him on account of his gender. The MSPB ruled that it lacked jurisdiction to hear his appeal since the termination was based on a statutory bar to federal employment. Because the MSPB appeal constituted a "mixed" claim, in that it included an allegation of

illegal discrimination, this Court has jurisdiction to review this matter, pursuant to 5 U.S.C. § 7703(b)(2).

7.      Venue is proper pursuant to 28 U.S.C. §§ 1391(b) and 1402(a).

## PARTIES

8.      The plaintiff Michael Elgin is a male United States citizen and resident of the Commonwealth of Massachusetts. He is 42 years old. He was last employed by the Internal Revenue Service.

9.      The plaintiff Aaron Lawson is a male United States citizen and resident of the State of California. He is 32 years old. He was last employed by the Bureau of Land Management.

10.     The plaintiff Henry Tucker is a male United States citizen and a resident of the District of Columbia. He was last employed by the Federal Deposit Insurance Corporation.

11.     Plaintiff Christon Colby is a male United States citizen and resident of the State of Michigan. He is 32 years old. He was last employed by the Internal Revenue Service.

12.     The defendant George W. Bush is President of the United States and, as such is the head of the Executive Branch of the United States government. He is named in his official capacity on all counts and is named individually on the claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).

13.     The Defendant Henry M. Paulson, Jr. is named in his official capacity as Secretary of the Treasury on all counts and is named individually on the claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of*

*Narcotics*, 403 U.S. 388 (1971). The Internal Revenue Service is a component of the Department of the Treasury.

14.    The Defendant Dirk Kempthorne is named in his official capacity as Secretary of the Interior on all counts and is named individually on the claim pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). The Bureau of Land Management is a component of the Department of the Treasury.

15.    The defendants United States of America, United States Department of the Treasury and United States Department of the Interior are subject to suit pursuant to the Administrative Procedures Act, 5 U.S.C. § 702, and 5 USCS § 7703.

## Class representatives

16.    The plaintiffs seek certification of this action as a class action pursuant to Fed. R. Civ. P., Rule 23.

17.    The plaintiffs request that two plaintiff classes be certified, as follows.

    a.    First, that a class be certified consisting of all male citizens and male legal residents of the United States age 26 and above whose registration is not on record with the Selective Service System and who, within the three years prior to the filing of this action, were removed from employment with an executive Branch agency because of such failure to register. As to this class the plaintiffs seek injunctive and equitable relief, including reinstatement and back pay.

    b.    Second, the plaintiffs request that a broader class be certified consisting of all male citizens and male legal residents of the United States age 26 and

above whose registration is not on record with the Selective Service System. As to this class the plaintiffs seek declaratory relief that would remove the bar to their federal employment.

c.  As to both classes, the plaintiffs also seek declaratory relief finding that the mandatory registration of men, but not women, violates the Equal Protection and Due Process provisions of the Fifth and Fourteenth Amendments.

18.  The plaintiffs' claims satisfy all the prerequisites stated in Rule 23(a):

a.  Members of both classes are so numerous that joinder of all members is impracticable. In support of this contention the plaintiffs refer to the 2006 Annual Report of the Selective Service System which states that as of 2006, some 93 percent of all males ages 18 through 25 had registered with the Selective Service System, primarily because 33 states have mandatory automatic registration through their motor vehicle departments. The Selective Service System reported that there were some 15,286,197 men in that age class. Based on the System's registration numbers, in 2006 some 7 percent of American males – 1,070,034 men – in the age range required to register failed to do so. Similar cohorts of men who reached age 26 without registering in each of the previous years since registration was reinstated in 1985 are also class members. All of those men are barred from Executive Branch employment. As they reach age 26, these men are unable to register with the Selective Service System and are irrevocably barred from Executive Branch employment for the remainder of their

lives. Those who were hired by Executive agencies are subject to termination.

b.  The legal claims brought by the plaintiffs in regard to the constitutionality of both 5 U.S.C. § 3328 and mandatory registration for men, but not for women, are identical for the plaintiffs and all class members. All such claims have common questions of law and fact.

c.  The claims of the representative parties are typical of the claims of all members of the class.

d.  In contrast to class certification, prosecuting similar actions separately by various members of the proposed classes could lead to the establishment of inconsistent legal standards and incompatible standards of conduct for the federal defendants.

e.  Further, adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications.

f.  The federal government defendants have acted on grounds that apply generally to the class so that final injunctive and declaratory relief is appropriate respecting the class as a whole.

g.  The representative parties will fairly and adequately protect the interests of the class. The plaintiffs seek declaratory and injunctive relief that will benefit all class members. Further, the plaintiffs are represented by counsel who are competent and experienced in constitutional and civil rights litigation.

19.    Because of the above factors, plaintiffs suggest that this action should be certified,

pursuant to Rule 23©, as a class action as requested above.

## FACTS

## The Selective Service System

20.    The Selective Service System is an independent agency within the Executive

Branch of the federal government, established by 50 U.S.C. § 460. It is not a part

of the Defense Department.

21.    The Military Selective Service Act, 50 U.S.C. § 453, *et. seq.*, requires all males

between the ages of 18 and 26 to register with the Selective Service System during

the 60-day period beginning 30 days before their eighteenth birthday.

22.    Men are barred from registering with the Selective Service after their twenty-

sixth birthday.

23.    It is a crime for a man to fail to register with the Selective Service System. The

punishment for failing to register within thirty days of a man's eighteenth

birthday is a fine of up to $10,000 and imprisonment for up to five years,

pursuant to 50 U.S.C. § 462. Men charged with this crime are entitled to a trial

and all substantive and procedural rights of those accused of crimes. Woman,

because they are not required to register, are not subject to this fine or

imprisonment.

24.    In addition to the criminal penalties for failing to register, men who fail to

register with the Selective Service System are ineligible for a host of federal

benefits, including federal student financial aid such as Pell grants and

guaranteed student loans, job training under the federal Workforce Investment

Act and U.S. citizenship for male immigrants. Women are not subject to these disqualifications from participation in federal programs or employment.

25. As applicable to the present action, men who fail to register with the Selective Service System within thirty days of their eighteenth birthdays are barred from employment with a federal Executive branch agency for the duration of their lifetimes, pursuant to 5 U.S.C. § 3328.

26. This statutory bar to federal employment, 5 U.S.C. § 3328, was enacted in 1987. The sponsor of the bill, Sen. Strom Thurmond, described the bar as a means of punishing "unpatriotic" men, saying that "if an individual refuses to recognize any responsibility to his country or to its citizens, and refuses to register with the Selective Service as required by law, then that individual should be barred from Federal civil service employment. It is really that simple. To permit such individuals to enjoy the privileges and benefits of civil service positions is not only unfair to taxpayers, it is unpatriotic." Sen. Samuel Nunn questioned the lifetime bar on federal employment yet commented that "I want to emphasize there ought to be sanctions and people ought to register. I think that is what the people are trying to bring about. I agree with that purpose."

27. The statutory bar to Executive Branch employment applies to all men who fail to register with the Selective Service System, whether or not a man has been charged with the crime of failing to register and whether or not a man has been convicted of that crime. The statute provides no right to a trial or a hearing before the bar to Executive Branch employment is imposed.

28. Although all men are required to register with the Selective Service System, no persons have been drafted into the military since July 1, 1973, pursuant to 50

U.S.C. § 467. Neither the President nor the Director of the Selective Service System has authority to institute a draft. Reinstitution of the military draft requires an act of Congress and approval by the President.

### Facts Regarding Mr. Elgin

29.    At the time of his eighteenth birthday, Mr. Elgin was a struggling high school student, living a hand-to-mouth existence after being ejected from his family home. He lived precariously, staying with friends and relatives and, at times, living in a car. He was the father of a baby boy when he was fourteen years old and he worked continuously through high school to meet his financial and emotional responsibilities as a father. Despite these hurdles, Mr. Elgin was determined to support his son and to graduate from high school, which he managed to accomplish.

30.    Because of this tumultuous existence, Mr. Elgin was unaware of the law requiring young men to register with the Selective Service within thirty days of their eighteenth birthday. He did not ever register.

31.    Mr. Elgin was hired by the Internal Revenue Service in 1991 and initially worked as a low-level data transcriber in Andover, Massachusetts. The IRS conducted a routine security investigation when Mr. Elgin was hired and gave him a favorable determination. Since that time, he received repeated promotions to positions with increasingly greater responsibility. Throughout his career at the IRS he received glowing praise and evaluations and was an exemplary employee.

32.    As part of a routine background investigation when he was proposed for a further promotion in 2002, the IRS learned that Mr. Elgin had not registered with the

Selective Service. The matter was forwarded to the federal Office of Personnel

Management ("OPM"), as required by the applicable regulations.

33.    Despite his failure to register with Selective Service when he was 18 years old, in

January 2007, the IRS found that Mr. Elgin had passed its background

investigation and his security status was raised from "low risk" positions to

"moderate risk" positions.

34.    OPM determined that Mr. Elgin's failure to register was willful and knowing and

that he was ineligible for federal employment, pursuant to 5 U.S.C. § 3328. The

IRS requested that OPM reconsider and find that Mr. Elgin's failure to register

was an inadvertent mistake. The IRS wrote to OPM that Mr. Elgin

> has an exemplary record with the IRS and is a valued
> and trusted employee whose loss would negatively
> impact his fellow employees, the employees he
> supports daily and management. Both Senators from
> Massachusetts have requested the IRS to issue an
> eligibility waiver that would allow Mr. Elgin to be
> retained as an employee of the IRS. The IRS joins in
> that request to OPM.

35.    Nonetheless, on February 22, 2007, OPM denied the IRS' request and affirmed

its finding that Mr. Elgin was ineligible for Executive agency employment.

36.    On July 18, 2007, the IRS wrote to Mr. Elgin that because of the final decision by

OPM concerning his ineligibility for employment, his employment would be

terminated as of July 27, 2007. His employment terminated on that date.

37.    Mr. Elgin appealed his termination to the Merit Systems Protection Board

("MSPB") on the grounds (1) that the statutory basis for his dismissal, 5 U.S.C. §

3328, constituted a Bill of Attainder and (2) that his termination discriminated

against him on account of his gender. On November 16, 2007, the MSPB

Administrative Judge allowed the IRS' motion to dismiss the appeal on the ground that because of the statutory bar to employment, the MSPB lacked jurisdiction to hear the appeal. The MSPB decision became final on December 21, 2007.

38.    Mr. Elgin's son, who was a baby when Mr. Elgin was in high school, served an eighteen-month tour of duty with the U.S. Army in Iraq.

### Facts regarding Mr. Lawson

39.    Mr. Lawson believes that he registered with the Selective Service System at the time of his 18th birthday by going to the Post Office in Norco, California, where he lived at the time, and completing the necessary forms. However, the Selective Service System has no record of such registration.

40.    He has served as a civil servant since 1997, first as a volunteer firefighter in the California Department of Forestry and later with the United States Department of Agriculture U.S. Forest service. In 2003, he accepted a position with the Bureau of Land Management. At that time he learned that the Selective Service System has no record of his registration.

41.    Mr. Lawson is a specialist in directing helicopters, engines and their crews in fighting forest fires. He regularly risks his life fighting wild fires, including the recent Esperonza fire in the San Bernadino National Forest in which five firefighters, friends of Mr. Lawson's, were killed. The government has spent tens of thousands of dollars training Mr. Lawson. The termination of his employment and the loss of such an experienced professional will place lives and property in jeopardy. Forest fires do not care whether the people who fight them registered with the Selective Service.

42.   Even though the Bureau of Land Management requested a waiver from the Office
      of Personnel Management for Mr. Lawson, that request was denied and Mr.
      Lawson has been notified that his federal employment is to be terminated
      because there is no record of his having registered with the Selective Service
      System.

### Facts Regarding Mr. Tucker

43.   Mr. Tucker's mother left him when he was sixteen years old and he moved from
      place to place throughout his teenage years. He was not aware that he was
      required to register with the Selective Service System when he was 18 years old.
      He never registered with Selective Service.

44.   Mr. Tucker worked for the Federal Deposit Insurance Corporation for 17 years in
      positions of increasing responsibility. His last position was as a Financial
      Institution Specialist.

45.   In 2007, the FDIC learned that Mr. Tucker had not registered with the Selective
      Service System and referred the matter to the Office of Personnel Management.

46.   After that, Mr. Tucker applied for a position with the National Institutes of
      Health and, in December 2007, was offered a position there as a Budget Analyst.
      When the NIH contacted the FDIC, it learned that Mr. Tucker had not registered
      with the Selective Service. After learning that information, the employment offer
      was withdrawn.

### Facts Regarding Mr. Colby

47.   Mr. Colby moved out of his parents' home at the age of 18. Mr. Colby never
      received any notices in the mail or otherwise explaining the requirement to
      register for Selective Service nor was he aware of his obligation to do so.

48.    Mr. Colby was unaware of the law requiring young men to register with the
Selective Service within thirty days of their eighteenth birthday. He did not ever
register.

49.    Mr. Colby first learned of the requirement of Selective Service registration in
approximately December 2001 when he was working as a temporary employee at
the IRS through a staffing company.

50.    When he learned of the Selective Service requirement, Mr. Colby contacted the
Selective Service and was notified that he did not have a Selective Service number
and that he could no longer register because he had already reached age 26.

51.    Mr. Colby began his employment with the Internal Revenue Service on May 20,
2002.  He informed the IRS that he had never registered with the Selective
Service.

52.    The IRS hired Mr. Colby following a routine background check and despite
knowing that he had not registered for Selective Service.

53.    Mr. Colby was initially hired by the IRS as a Computer Operator.  During his
employment with the IRS, he received consistently excellent performance reviews
and numerous promotions to positions with greater responsibilities.

54.    On June 25, 2003, the IRS notified Mr. Colby that it had become aware of his
failure to register for Selective Service.

55.    On July 2, 2003, Mr. Colby wrote a letter to the Office of Personnel Management
explaining why his failure to register was not knowing and willful. Mr. Colby
explained that he was unaware of his obligation to register until it was too late.

56.   In accordance with 5 C.F.R. § 300.707, the personnel office for Mr. Colby's operations branch submitted a request to the Office of Personnel Management to determine whether Mr. Colby's failure to register was knowing and willful.

57.   On February 16, 2006, the Office of Personnel Management issued a letter setting forth its conclusion that "Mr. Colby's explanation that his failure to register was not knowing and willful fails to meet the preponderance of evidence standard." OPM's letter does not contain any analysis or reasoning in support of this conclusion.

58.   After receiving the OPM's decision, Mr. Colby's supervisor sent a letter to the director of OPM, requesting that the OPM reopen and reconsider its determination with regard to Mr. Colby's eligibility for an appointment to a position with the IRS.  The IRS's letter attested to Mr. Colby's integrity and value as a skilled and experienced IRS employee as follows:

> Christon Colby's value as an employee is reflected in his evaluation. He rated a 4.8 out of a possible 5.0.  The narrative contains numerous accolades as to his ability to deal well with our customers, handle and prioritize his work schedule, work well both within both his work group and within the Branch.  If I were to lose him then I will also lose a valuable and congenial employee (the kind that is hard to come by these days).  Christon is an extremely valuable and integral part of my staff.  I have over 160 employees, spread over 9 cities, contained in 14 separate units of operations. They work in an environment that requires good personnel skills, self motivation, a can do attitude, and intelligence.  These are skills that Christon has and are hard to find in people.  If I lose him, his work load falls to the others in his unit and becomes a burden for them until a replacement is identified and trained well enough to take over what was lost.

> Since Christon was hired, the IRS has invested in excess of $25,000 into his education to perform in his role as an Information Technology Specialist, System Administrator.  He has received this classroom training, on-site, while working here at the Enterprise Computing Center, Detroit, Michigan, over the last 9 months.  He is

currently responsible for the Operations and Maintenance of assigned applications housed on highly sophisticated Sun Servers kept here at the Center. If I were to lose Christon, I will be forced to post his vacant position, losing valuable time and putting a burden upon others on my staff to carry his work load which is critical to the IRS businesses. I will have to provide the staff to rank the package when it is returned from Human Resources, provide the staff to interview any possible candidates, make that selection and then begin the tedious and expensive task of (re-)training that individual to fill in behind someone that I had already invested so much time, sweat equity, nurturing, and money. Let's also not lose sight of the fact that I will have lost the time that Christon would have continued to work, continued to learn, and continued to contribute to my organization.

Director Springer, I am requesting a waiver concerning the condition of employment that is now before you. I believe Christon has a bright future at the IRS and am appealing to you that we are allowed to retain Christon Colby as an employee.

59. On February 22, 2007, the Director of OPM, issued a final determination letter concluding that the evidence in Mr. Colby's case was "insufficient to overcome the statutory presumption that your failure to register was knowing and willful."

60. On July 30, 2007, the IRS, through Rick Ware, the Director of the Enterprise Computing Center, informed Mr. Colby that his employment would be terminated effective August 3, 2007.

61. Mr. Colby's last day of employment with the IRS was July 30, 2007.

62. During his freshman year of college, at the age of 19, Mr. Colby considered enlisting in the Navy because his father had served in the Navy during the Vietnam War and he wanted to follow in his father's footsteps. Mr. Colby visited a Navy recruiting office and a recruiter visited his parents' house to discuss his interest in the Navy. Mr. Colby's selective service status was never discussed during these meetings and the Navy recruiter never indicated to Mr. Colby that he did not have a Selective Service number.

63. Mr. Elgin, Mr. Lawson, Mr. Tucker and Mr. Colby were all valuable federal employees. There was no cause for their terminations except for their failures to have registered with the Selective Service System and their gender.

## The Role of Women in the Military
## Has Changed in Recent Years

64. There remains no military justification for the requirement that men, but not women, be registered with the Selective Service System.

65. All men between the ages of 18 and 26 residing in the United States are required to register with the Selective Service System, regardless of their physical or mental condition or their fitness for service in the military. The Selective Service advises that a friend or relative help a disabled man complete the registration form if he is unable to do so himself. Such disabled men are not eligible to serve in the military. The registration requirement is without regard to men's actual ability or eligibility to serve in the military in any capacity.

66. Conversely, all women, no matter their fitness or ability to serve in the armed forces, are excluded from registration.

67. The requirement that men unfit for service must register with the Selective Service and the prohibition against registration by women who are well qualified to serve in the military serves no important governmental objective nor is this distinction between men and women substantially related to the achievement of any important governmental objective. This statutory scheme ignores the crucial role that women play in today's military. Instead, the male-only registration requirement is, as the Supreme Court commented in a similar context, based on

"overbroad generalizations about the talents, capacities, or preferences of women."

68.    The role of women in the military has changed dramatically in recent years. For example, virtually all positions in the Navy, the Coast Guard and the Air Force are now open to women. Women serve on Navy combat ships and fly Navy and Air Force combat aircraft. Women serve in 92 percent of occupations in the Army. Some 80 percent of military job titles are open to women. Women make up 15 percent of the armed forces and as high as 18 percent of lower enlisted ranks and junior officer ranks. More than 200,000 women presently serve in the United States military. The percentage of the armed forces represented by women has increased from 1.6 percent in 1973 to 8.4 percent in 1980 to 15 percent at present. In fact, the Department of Defense is the largest single employer of women in the country.

69.    All branches of the armed forces actively recruit women and seek to induce them to enlist voluntarily. All branches of the military have recruiting material specifically targeted at women emphasizing the benefits and opportunities for women in the military and the contributions women make to the armed forces. Women make up 20 percent of new recruits.

70.    Women attend all of the military service academies. In 2001, women were 16 percent of the graduating class of West Point, 18 percent of the graduating class of the Air Force Academy, 17 percent of the graduating class of the Naval Academy, and 25 percent of the graduating class of the Coast Guard Academy.

71.    Women have served more than 170,000 tours of duty in the current war in Iraq, constituting approximately one in seven of all military personnel deployed. The

percentage of women serving in Iraq is four times the percentage of women who served in the 1991 Persian Gulf war. For example, nearly one-fourth of all Army intelligence personnel are women. Despite statutory limits on women being assigned to front line combat positions, the Army has awarded thousands of Combat Action Badges to women fighting in Iraq and Afghanistan. The Department of Defense states the purpose of the Combat Action Badge as providing "special recognition to Soldiers who personally engage the enemy, or are engaged by the enemy during combat operations." http://www.army.mil/symbols/combatbadges/Action.html. More than ninety-four American servicewomen have been killed in Iraq.

72.    A recent Rand Corporation study of the role of women in the military forces serving in Iraq concluded that women were actively involved in routine self-defense missions that included providing security for their own units, providing personal security for leadership, and, in some cases, providing security for other support units. In fact, this study, funded by the Department of Defense, concluded that insurgents were more likely to target the type of units to which women are assigned than the direct combat units to which women are not directly assigned.

73.    The acceptance of women's service in the war in Iraq is reflected by the common usage of the term "men and women" when referring to American troops in Iraq. References to American troops in Iraq only as "men" has become rare at all levels of society, including the top levels of government.

74. The Selective Service System acknowledges that if given the mission and additional funding, it is capable of registering and drafting women with its existing infrastructure.

75. The military would be unable to perform its missions in Iraq and Afghanistan but for the American women serving in those countries.

## COUNT ONE
## Bill of Attainder

Plaintiff realleges the foregoing paragraphs.

76. The prohibition against Executive agency employment for men who failed to register with Selective Service is a punishment imposed by Congress on men deemed disloyal and unwilling to defend the nation.

77. A bar to specific kinds of employment, such as the prohibition against Executive agency employment at issue, is the type of punishment historically imposed by bills of attainder and bills of pains and penalties.

78. The Military Selective Service Act, 50 U.S.C. § 451, permits registration only for men between the ages of 18 and 26. As a result, at the time Mr. Elgin, Mr. Lawson, Mr. Tucker and Mr. Colby were first informed that they would be fired, when each was older than 26, they were legally incapable of registering with the Selective Service.

79. The punishment imposed by 5 U.S.C. § 3328, barring Mr. Elgin, Mr. Lawson, Mr. Tucker and Mr. Colby, among others, from Executive agency employment, was inflicted without trial or the right to trial.

80. The punishment imposed by 5 U.S.C. § 3328 is inflicted on an easily identifiable group of men born after December 31, 1959 who did not register with the

Selective Service System. In fact, to facilitate the determination of whether a man falls within the group on whom the bar to employment is imposed, the Selective Service System established an online query facility at which by entering a man's last name, Social Security number and date of birth, information is instantly provided as to whether or not he registered with Selective Service. That query service is online at https://www.sss.gov/RegVer/wfVerification.aspx. By means of this service it can be instantly determined whether a man falls within the group on which the statutory bar to employment is imposed.

81.    As a result of the above, the statutory bar to Executive agency employment imposed by 5 U.S.C. § 3328 is a Bill of Attainder, prohibited by Art. I, § 9, cl. 3 of the United States Constitution.

**COUNT TWO**
**Equal Protection Violation**

Plaintiff realleges the foregoing paragraphs.

82.    Were the plaintiffs female rather than male, they would not have been terminated from federal employment.

83.    While at the time of its enactment, the male-only registration requirement may have been justified by the limited and nonessential role played by women in the armed forces at that time, the role of women has changed dramatically in recent years. Because of the vital, crucial and essential tasks performed by women in today's military, there is no longer any logical or legal justification for limiting Selective Service registration to men. The present scheme in which men with physical and mental infirmities making them ineligible for military service are required to register, while physically fit and mentally capable women are barred

from registration neither serves important governmental objectives nor is substantially related to achievement of those objectives.

84.    The Military Selective Service Act, 50 U.S.C. § 453, *et. seq*., requirement that only men must register with the Selective Service, and the prohibition against Executive agency employment imposed by 5 U.S.C. § 3328 for men, but not women, who fail to register violates the plaintiffs' right to the Equal Protection of the laws under the Fifth and Fourteenth Amendments to the United States Constitution.

## RELIEF REQUESTED

WHEREFORE, plaintiffs respectfully request that this Court grant the following relief against the federal defendants pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202; the Administrative Procedures Act, 5 U.S.C. § 702, and 5 U.S.C. ¤ 7703(b)(2), and against the individual defendants pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971):

1.    A declaratory judgment that 5 U.S.C. § 3328 constitutes a Bill of Attainder in violation of Art. I, § 9, cl. 3 of the United States Constitution.

2.    A declaratory judgment that 50 U.S.C. § 451, *et. seq.* and 5 U.S.C. § 3328 violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, as applied to the federal government by the Fifth Amendment to the United States Constitution, in that they place burdens and penalties on men that are not placed on women, in that they stigmatize women as ineligible for required service to their country in time of need, in that they require young men, but not young women, to

continuously report their residence to the government, and in that they distinguish between men and women based on archaic stereotypes and misconceptions, to the detriment of men and women and the national welfare.

3.   A preliminary injunction prohibiting the defendants from implementing or enforcing the provisions of 5 U.S.C. § 3328 and requiring the reinstatement of the plaintiffs to their federal employment.

4.   A permanent injunction prohibiting the defendants from implementing or enforcing the provisions of 5 U.S.C. § 3328 and requiring the reinstatement of plaintiffs and all class members discharged from federal employment, with full back pay and benefits.

5.   Attorneys' fees and costs and expenses pursuant to 42 U.S.C. § 1988, 28 U.S.C. § 2412 and Fed.R.Civ.P., Rule 23(h).

6.   Such other and further relief as this Court deems appropriate.


Michael Elgin, Aaron Lawson, Henry
Tucker and Christon Colby,
Plaintiffs and class representatives,
By their attorneys,

/s/ Harvey A. Schwartz
Harvey A. Schwartz, BBO # 448080
Lori A. Jodoin, BBO # 655840
RODGERS, POWERS & SCHWARTZ
18 Tremont Street, Suite 500
Boston, MA 02108
(617) 742-7010