# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| MICHAEL B. ELGIN, AARON LAWSON, HENRY TUCKER and CHRISTON COLBY on behalf of themselves and similarly situated men throughout the United States | ) ) ) ) ) |  |
|  | ) |  |
| Plaintiffs, | ) |  |
|  | ) |  |
| v. | ) | Civil Action No. 07-12391-DPW |
|  | ) |  |
| UNITED STATES OF AMERICA; UNITED STATES DEPARTMENT OF THE TREASURY; and UNITED STATES DEPARTMENT OF THE INTERIOR | ) ) ) |  |
|  | ) |  |
| Defendants.[1] | ) |  |

_____)

## MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION FOR RECONSIDERATION

Defendants move for reconsideration, under Fed. R. Civ. P. 59(e), of the Court's January 26, 2009 Memorandum and Order finding that 5 U.S.C. § 3328 is an unconstitutional bill of attainder.  Defendants believe reconsideration is warranted because:

    1.      This Court does not have subject matter jurisdiction over Plaintiffs' claims.[2]

---

[1] Plaintiffs' First Amended Class Action Complaint also named as defendants George W. Bush, Henry M. Paulson, Jr., and Dirk Kempthorne, individually and in their official capacities as, at that time, President of the United States, Secretary of the Treasury, and Secretary of the Interior, respectively.  Dkt. No. 7.  On June 16, 2008, Plaintiffs moved to dismiss all claims against the individual Defendants.  Dkt. No. 40.  During the February 6, 2009 status conference in this matter, the Court orally noted that it granted Plaintiffs' motion to dismiss the individual Defendants, but the docket does not yet reflect this order.

[2] Defendants failed to raise this argument in their motion to dismiss.  Dkt. No. 39.  After reviewing this jurisdictional argument and in consultation with other federal departments and agencies, Defendants' counsel advised the Court about this omission during the February 6 status conference in this matter and indicated that Defendants wished to raise this jurisdictional argument in a motion for reconsideration.  This omission, however, does not affect the argument raised here because challenges to a court's subject matter jurisdiction may be raised at any time.

Under the Civil Service Reform Act of 1978 ("CSRA"), the Federal Circuit Court of Appeals has exclusive jurisdiction over Plaintiffs' constitutional challenges to 5 U.S.C. § 3328, the statute barring their federal employment for failure to register with the Selective Service System, and Plaintiffs failed to exhaust their remedies under the CSRA, a jurisdictional prerequisite to any suit;

2.      The statute at issue here is not a bill of attainder because (a) it is prospective in nature and, at the time Congress passed 5 U.S.C. § 3328, the statute did not punish *anyone* for past conduct; and (b) under the CSRA's comprehensive remedial scheme, there is a provision for judicial review of Plaintiffs' claims.

For all of these reasons, Defendants respectfully request that the Court reconsider its January 26, 2009 Memorandum and Order finding that 5 U.S.C. § 3328 is an unconstitutional bill of attainder and dismiss Plaintiffs' claims in their entirety.[3]

## ARGUMENT

District courts have "substantial discretion and broad authority" to grant or deny a motion for reconsideration.  Ruiz Rivera v. Pfizer Pharms., LLC, 521 F.3d 76, 81 (1st Cir. 2008).  A court may properly grant a motion for reconsideration "where the movant shows a manifest error of law or newly discovered evidence" or where the court "has patently misunderstood a party . . . or has made an error not of reasoning but apprehension."  Id. at 82.  Reconsideration is warranted here because (1) this Court does not have subject matter jurisdiction over Plaintiffs'

---

Fed. R. Civ. P. 12(h)(3) ("If the court determines *at any time* that it lacks subject-matter jurisdiction, the court must dismiss the action") (emphasis added); American Fiber & Finishing, Inc. v. Tyco Healthcare Group, LP, 362 F.3d 136, 138-39 (1st Cir. 2004) (noting that challenges to federal subject matter jurisdiction may be raised for the first time on appeal).  Defendants regret their error in not raising this jurisdictional argument in their motion to dismiss; they raise it now because they believe this Court does not have subject matter jurisdiction and, therefore, for the reasons discussed below, should dismiss this action.

[3] In the alternative, because this Court lacks subject matter jurisdiction, Defendants request that the Court transfer this case to the United States Court of Appeals for the Federal Circuit, pursuant to 5 U.S.C. § 7703(b)(1).

claims, and (2) this Court made an error of law when it found that 5 U.S.C. § 3328 is an

unconstitutional bill of attainder.

## I.     The Civil Service Reform Act Provides The Exclusive Remedies For The Employment Claims Of Federal Employees.

Plaintiffs' challenges to their terminations[4] from Federal service are governed by United

States v. Fausto, 484 U.S. 439 (1988).  See Pathak v. Dep't of Veterans Affairs, 274 F.3d 28, 31

(1st Cir. 2001).  Where Congress has specified a comprehensive scheme governing the

availability of judicial review, that scheme is exclusive and divests other courts, including this

Court, of any jurisdiction to review Plaintiffs' claims, including constitutional claims.  To the

extent that Plaintiffs allege a colorable constitutional claim in connection with these "adverse

actions" that resulted in their termination from Federal service, Plaintiffs' recourse may be had

only in accordance with the CSRA, which provides exclusively for review by specified

administrative bodies in the first instance, and as to any subsequent review, only by the Court of

Appeals for the Federal Circuit.  None of these Plaintiffs has fully exhausted the remedies

available under the CSRA, choosing instead to seek redress in the first instance in this Court.

The one Plaintiff, Michael Elgin, who did seek administrative remedies before the Merit Systems

Protection Board [5] ("MSPB" or the "Board"), failed to seek judicial review of the Board's

decision before the Federal Circuit, the only circuit with jurisdiction to review the Board's

---

[4]  Plaintiff Henry Tucker was not terminated from Federal employment.  Rather, he voluntarily resigned.

[5]  The MSPB is a quasi-judicial government agency charged with adjudicating federal employee appeals of certain agency personnel actions, including adverse actions, and charged with determining as a threshold issue whether an action is an "adverse action."  See 5 U.S.C. § 7513(d); Sloan v. West, 140 F.3d 1255, 1258 (9th Cir. 1998).

decision.  Plaintiffs may not circumvent or short-cut these remedies by seeking judicial review in this Court under the Administrative Procedure Act.  See id. at 32.  Therefore, this Court lacks subject matter jurisdiction over Plaintiffs' claims.

**A.      Background On The Civil Service Reform Act.**

In 1978, Congress passed the CSRA, Pub. L. No. 95-454, 92 Stat. 1111, which "comprehensively overhauled the civil service system," Lindahl v. OPM, 470 U.S. 768, 773 (1985), and established "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."  Fausto, 484 U.S. at 444-45.  Before 1978, there was no systematic scheme for review of personnel actions.  Some employees were afforded administrative review of adverse personnel actions by statute or executive order; others had no right to such review.  Federal employees often sought judicial review of agency personnel decisions in "district courts in all Circuits and the Court of Claims," through "various forms of actions . . . including suits for mandamus, injunction, and declaratory judgment."  Id.  Thus, Congress passed the CSRA in response to this "outdated patchwork of statutes and rules built up over almost a century."  Id. at 444.

The CSRA represents the culmination of over a century of legislative "consideration of the conflicting interests involved in providing job security, protecting the right[s of workers], and maintaining discipline and efficiency in the federal work force."  Bush v. Lucas, 462 U.S. 367, 385 (1983).  The CSRA's provisions regulate virtually every aspect of federal employment, from personnel practices and adverse actions to labor relations and employee grievances.  Within each category, the CSRA provides a "comprehensive" scheme of protections and remedies for

federal employment disputes, <u>Fausto</u>, 484 U.S. at 448, and "prescribes in great detail the

protections and remedies applicable . . . including the availability of . . . judicial review." <u>Id.</u> at

443.

The CSRA creates a three-tiered system for review of personnel actions, providing

graduated procedural protections based on the seriousness of the employment action at issue.

Greatly simplified, this system provides as follows: (a) "for major personnel actions specified in

the statute ('adverse actions')," there is an explicit right of judicial review in the Court of

Appeals for the Federal Circuit "after extensive prior administrative proceedings," <u>Carducci v.</u>

<u>Regan</u>, 714 F.2d 171, 175 (D.C. Cir. 1983) (Scalia, J.); (b) for specified "personnel actions

infected by particularly heinous motivations or disregard of law ('prohibited personnel

practices')," the CSRA provides administrative mechanisms to be followed by judicial review by

the Federal Circuit in specified circumstances, <u>id.</u>; and (c) for all other minor personnel actions

involving bargaining-unit employees, the CSRA provides a grievance procedure and those

involving non-bargaining unit employees generally are limited to a separate internal agency

grievance mechanism.  <u>Id.</u>

      **B.**      **The Office Of Personnel Management Terminated Plaintiffs' Federal**
                     **Employment.**

The Office of Personnel Management ("OPM") based its decisions to terminate

Plaintiffs' employment from Federal service because their failure to register for the Selective

Service rendered them "ineligible for appointment to a position in an Executive agency." <u>See</u> 5

U.S.C. § 3328 (a).  As provided by the plain language of OPM's regulations at 5 C.F.R. Part 300,

Subpart G, promulgated under Section 3328, Plaintiffs were first required to explain to OPM

their reason for failing to register so that OPM could determine whether such failure was

knowing or willful.  OPM's regulation at 5 C.F.R. § 700.707 mandates that "[a] covered individual who is serving under an appointment made on or after November 8, 1985, and is not exempt from registration, will be terminated by his agency under the authority of the statute and these regulations if he has not registered as required, unless he registers or unless, if no longer eligible to register, OPM determines in response to his explanation that his failure to register was neither knowing or willful."  5 C.F.R. § 300.707.  The employing agency is required to comply with OPM's decision.

### C. OPM's Terminations Of Federal Employment Constitute Adverse Actions Subject To The CSRA's Remedial Scheme.

Here, Plaintiffs' claims, as construed, purport to allege "adverse actions" within the meaning of the CSRA because OPM terminated Plaintiffs' Federal employment.  Plaintiffs' allegations, in essence, are a challenge to the loss of their jobs in the Federal service.  See 5 U.S.C. § 7512.  This is likewise reflected in Plaintiffs' requested remedy, as Plaintiffs primarily seek "reinstatement to federal employment."  First Am. Compl. Relief Req. ¶¶ 3-4.  The means by which they seek to challenge their "removals" from Federal employment is by challenging the constitutionality of the statutes and regulations concerning Selective Service ineligibility determinations.  Should Plaintiffs prevail in this argument that the underlying statutes are unconstitutional, then their "terminations" or "removals" arguably would be unlawful adverse actions either because they did not comply with the procedures set forth in Chapter 75 or because the actions did not "promote the efficiency of the [Federal] service."  See 5 U.S.C. §§ 7512, 7513(a).  The MSPB – not the district court – has jurisdiction to hear adverse action appeals[6] and

---

[6] Indeed, a fair read of Plaintiffs' First Amended Class Action Complaint appears to concede that jurisdiction lies in the first instance to the MSPB, as the Complaint predicates

to determine as a threshold jurisdictional matter whether the action appealed is, in fact, an appealable "adverse action" within the meaning of Chapter 75.

Finally, all petitions to review a final order of the MSPB, whether it is a decision of the administrative judge that the employee has allowed to become final by not petitioning the MSPB for review or a final decision of the MSPB itself "shall be filed in the United States Court of Appeals for the Federal Circuit."  5 U.S.C. § 7703(b)(1).  The Federal Circuit is the Board's exclusive reviewing court, and the Federal Circuit too must first determine as a threshold matter whether it (and the Board) possess subject matter jurisdiction by determining generally whether the final agency action was an "adverse action" and, toward that end, specifically in these cases whether the challenged statutes are unconstitutional.

   **D.    Even If This Court Had Jurisdiction, Plaintiffs Failed To Pursue Their Applicable CSRA Administrative Remedies, Which Are Jurisdictional Prerequisites To Suit.**

Even if this Court did have jurisdiction, Plaintiffs would have had to first exhaust their administrative remedies.  Cf. Whitman v. Dep't of Transp, 126 S. Ct. 2014 (2006); Steadman v. Governor, United States Soldiers' and Airmen's Home, 918 F.2d 963, 967 (D.C. Cir. 1990) (holding that "when a constitutional claim is intertwined with a statutory one, and Congress has provided machinery for the resolution of the latter, a plaintiff must first pursue the administrative machinery").  The First Circuit has held that requiring exhaustion of administrative remedies, in accordance with the CSRA, serves important purposes: "It protects administrative agency authority and promotes judicial efficiency.  It also prevents litigants from bypassing Congress'

---

jurisdiction to this Court on the statute that otherwise provides for judicial review of MSPB decisions, 5 U.S.C. § 7703(b)(2).  See First Am. Compl. ¶ 6.

carefully crafted remedial scheme" and "permits the federal agency to correct the violation or to explain its decision.  This promotes agency authority and accountability" and "reduces the caseload of the federal courts and relieves the courts from serving as 'super personnel boards.'" Irizarry v. United States, 427 F.3d 76, 79 (1st Cir. 2005).

Here, the four named Plaintiffs have varying degrees of administrative exhaustion, though none of them exhausted all of his administrative remedies.  Plaintiff Tucker apparently did not pursue any of the remedies afforded to him under the CSRA; Plaintiffs Colby and Lawson challenged their Selective Service determinations in writing to OPM but did not appeal the subsequent termination decisions to the MSPB; and Plaintiff Elgin appealed his termination to the MSPB and received an initial decision from the MSPB but did not petition the MSPB for a final decision,[7] opting instead to file suit in this Court.  See First Am. Compl. ¶ 6.

### E.    The United States Court Of Appeals For The Federal Circuit Has Exclusive Jurisdiction To Provide Judicial Review Of The MSPB's Dismissal Of Elgin's So-Called "Mixed" Claims.

Plaintiffs' suggestion that they have brought a "mixed" claim within this Court's jurisdiction under 5 U.S.C. 7702(a) is also in error.  As an initial matter, Plaintiffs have not invoked Title VII in their First Amended Class Action Complaint or otherwise expressly alleged a Title VII violation.  For that reason alone, this contention cannot support the Court's jurisdiction.

Moreover, even assuming that Plaintiffs had properly alleged a Title VII claim, the Court

---

[7]  An employee who files an appeal within the Board's jurisdiction is entitled to a hearing before an administrative judge.  5 U.S.C. §§ 7701, 1204.  All decisions by an administrative judge are the final decision of the Board unless the employee timely petitions the MSPB for review.  5 U.S.C. § 7701(e)(1).

cannot assume jurisdiction unless and until Plaintiffs have exhausted the appropriate

administrative remedies.  Thus, a plaintiff who wishes to proceed directly under Title VII must

first exhaust the employing agency's administrative processes for investigating and resolving

complaints of unlawful discrimination.  See 42 U.S.C.  2000e-16(c); 29 C.F.R. 1614.104-

1614.110; Brown v. General Serv. Admin., 425 U.S. 820, 832-33 (1976).  Absent such

exhaustion, the Court cannot exercise jurisdiction over the Title VII claim.  Id.

A plaintiff who brings a Title VII claim "mixed" in with a challenge to an adverse

personnel action has an alternative avenue of review under the CSRA.  The CSRA provides that

the MSPB may decide a claim of discrimination prohibited by Title VII and similar statutes

when the alleged discrimination forms a basis for an agency action over which the MSPB

otherwise has jurisdiction.  King v. Reid, 59 F.3d 1215 (Fed. Cir. 1995); 5 U.S.C. 7702(a)(1).  If

the employee files such a "mixed" claim with the MSPB, the MSPB is required to address both

the alleged discrimination and the adverse employment action. 5 U.S.C. § 7702(a)(1).  If the

MSPB decides such a claim on the merits, the aggrieved party then has the option of appealing to

either the Equal Employment Opportunity Commission, 5 U.S.C. 7702(b)(1), or district court, 5

U.S.C. 7702(a)(3).

The case law makes clear, however, that a plaintiff cannot utilize this CSRA avenue of

review unless the Title VII claim is coupled with a claim that is otherwise cognizable by the

MSPB.  See Powell v. Dept. of Defense, 158 F.3d 597, 597 (D.C. Cir. 1998) (holding that a

"mixed" claim is one that alleges both a "Board-jurisdictional agency action and a claim of

unlawful discrimination," under other federal statutes); Harms v. IRS, 321 F.3d 1001, 1005 (10th

Cir. 2003) (mixed case requires challenge to employment action that is within MSPB's

jurisdiction), cert. denied, 540 U.S. 858 (2003); DiPaulo v. Potter, 570 F. Supp. 2d 802 (M.D. N.C. 2008) (district court could not assume jurisdiction over alleged "mixed claim" where MSPB dismissed employee's case for lack of jurisdiction).[8]

None of the Plaintiffs here satisfied these CSRA exhaustion requirements. Most did not appeal to the MSPB at all. And the one Plaintiff who did appeal to the MSPB, Elgin, brought a constitutional challenge to an act of Congress that the MSPB could not and did not decide on the merits. As a result, no administrative forum has developed an appropriate evidentiary record, explored whether other, independent grounds exist for the challenged employment action, or passed upon the merits of Plaintiffs' claims.

Even if Plaintiffs had properly alleged a Title VII violation, the Court cannot properly assume jurisdiction in this posture. Both the CSRA and Title VII make clear that an administrative forum must have the opportunity and authority to pass upon the merits of discrimination claim before it may be heard in district court. These exhaustion requirements facilitate the creation of an appropriate agency record, help narrow the issues requiring judicial

---

[8] See also 29 C.F.R. 1614.302(a), which defines mixed claims and mixed appeals as follows:

(1) Mixed case complaint. A mixed case complaint is a complaint of employment discrimination filed with a federal agency based on race, color, religion, sex, national origin, age or handicap related to or stemming from an action that can be appealed to the Merit Systems Protection Board (MSPB). The complaint may contain only an allegation of employment discrimination or it may contain additional allegations that the MSPB has jurisdiction to address.

(2) Mixed case appeals. A mixed case appeal is an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age.

review, offer the agency a chance to correct its own errors and to more fully explain its

decisional rationale, and generally promote important interests in judicial economy.  As the

Supreme Court has explained with respect to Title VII's administrative remedies, "by creating a

dispute resolution system that requires a complaining party to pursue administrative relief prior

to court action," Congress intended to "encourag[e] quicker, less formal, and less expensive

resolution of disputes within the Federal Government and outside of court."  West v. Gibson,

527 U.S. 212, 218-19 (1999).  Thus, regardless of whether an aggrieved employee proceeds

directly under Title VII or the CSRA, he must timely exhaust administrative remedies before

bringing his discrimination claims to court.  None of the Plaintiffs has satisfied this requirement.

This Court therefore lacks jurisdiction over Plaintiffs' claims.

II.     **Section 3328 Is Not A Bill Of Attainder.**

      A.     **The Court Erred In Analyzing Plaintiffs' "Past Conduct" At The Time Their Employing Agencies Learned Of Their Nonregistered Status Rather Than At The Time Congress Enacted 5 U.S.C. § 3328.**

      A bill of attainder is a law that legislatively determines guilt and inflicts punishment on

an identifiable individual or group without provision of the protections of a judicial trial.  Nixon

v. Administrator of General Services, 433 U.S. 425, 468 (1977).  In its January 26, 2009

Memorandum and Order, the Court held that there are "three requirements for a statute to qualify

as an unconstitutional bill of attainder: specification of the affected persons; punishment; and

lack of a meaningful judicial role."  Dkt. No. 42, at 7.

      In analyzing the specification requirement, the Court erred in its analysis of the time at

which "past conduct" is fixed.  The Court took a snapshot of Plaintiffs at the time their

employing agencies learned that they had not registered with the Selective Service System.  At

that fixed point in time, all Plaintiffs were over age twenty-six and, therefore, none of them could register.  For purposes of determining whether a statute is a bill of attainder, however, the snapshot of "past conduct" for specification purposes must be taken *at the time the law is passed*. See Seariver Mar. Fin. Holdings Inc. v. Mineta, 309 F.3d 662, 669 (9th Cir. 2002) (finding that test is whether "class was 'easily ascertainable' when the legislation was passed").  In other words, at the time Congress enacted 5 U.S.C. § 3328 on November 8, 1985, Colby and Lawson were ten years old, Tucker was fifteen years old, and Elgin was twenty years old.  Their time to register – between the ages of eighteen and twenty-six – had not elapsed.  Thus, the statute is not a bill of attainder because, *at the time it was passed,* it did not punish these men for past conduct.

Indeed, 5 U.S.C. § 3328 did not punish *anyone* for past conduct when it was enacted because the statute is prospective in nature.  The statute applies to men "born after December 31, 1959."  5 U.S.C. § 3328(a)(1).  Thus, at the time of its passage on November 8, 1985, the statute did not apply to any male who was already over the age of twenty-six.  The specificity element of the bill of attainder analysis is met where named individuals or easily ascertainable members of a group are designated based on *irreversible* past conduct.  Roe v. Farwell, 999 F. Supp. 174, 193 (D. Mass. 1998); Selective Serv. Sys. v. Minnesota Pub. Interest Research Group, 468 U.S. 841, 847 (1984) ("Minnesota PIRG"); United States v. Lovett, 328 U.S. 303, 315 (1946).  Because the statute at issue here was prospective when enacted, it does not inflict punishment on any males.

The prospective nature of 5 U.S.C. § 3328 is dispositive of the bill of attainder issue.  The ability to cure the basis for a statutory sanction – here, the bar on federal executive agency employment for men who failed to register before age twenty-six – weighs against treating the

statute as a bill of attainder, largely because the possibility of corrective action means that the class cannot be known or specified with any certainty.  See Minnesota PIRG, 468 U.S. at 850; United States v. Brown, 381 U.S. 437, 457 (1965); American Commc'ns Ass'n v. Douds, 339 U.S. 382, 413 (1950); Seariver, 309 F.3d at 669-70.  Here, the employment bar was entirely prospective at the time of its enactment in the sense that no male was subject to the sanction when the bill was passed.  Accordingly, the statute's prospective focus and the ability of affected men to avoid the sanction with subsequent, remedial conduct should weigh heavily against finding that 5 U.S.C. § 3328 is an unconstitutional bill of attainder, and the Court should grant Defendants' motion for reconsideration on that basis.

**B.      OPM Does Not Treat The "Deeming" Presumption Of Knowledge Of The Registration Requirement As Irrebuttable.**

The Court appeared to find that an individual's burden of proving to OPM that his failure to register was neither knowing nor willful "is apparently treated as effectively irrebuttable by the OPM."  Dkt. No. 42 at 11.  To the contrary, OPM has found on several occasions that an individual's failure to register was *not* knowing and willful.  Moreover, OPM has granted waivers of the bar to federal employment for failure to register with the Selective Service System to men based on circumstances such as medical conditions, active military service, and residence in another country.  As demonstrated in the attached declaration, OPM has found that an individual's failure to register was *not* knowing and willful on numerous occasions.  See Declaration of Kimberly T. Call, attached as Exhibit A.[9]  This demonstrates that 5 U.S.C. § 3328 is not a bill of attainder because the statute does not apply to "easily ascertainable members of a

---

[9]  Defendants attach the Declaration of Kimberly T. Call because it appears that the Court relied, at least in part, on factual assumptions that are incorrect.

group" as it is not easy to ascertain which men, among those who have not registered, may be found by OPM to have knowingly and willfully failed to register.  The group of men to whom 5 U.S.C. § 3328 applies is not simply men who failed to register with the Selective Service System, but men who, having failed to register, provide OPM with an explanation of their failure to register, request a determination from OPM, and are determined by OPM to have knowingly and willfully failed to register.

## CONCLUSION

For the foregoing reasons, Defendants request that the Court grant their motion for reconsideration and dismiss Plaintiffs' First Amended Class Action Complaint or, in the alternative, transfer this case to the United States Court of Appeals for the Federal Circuit.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:    /s/ Jennifer A. Serafyn
Jennifer A. Serafyn
Assistant United States Attorney
United States Attorney's Office
One Courthouse Way, Suite 9200
Boston, MA  02210
Tel:  (617) 748-3188
Dated: April 3, 2009                    Fax:  (617) 748-3969

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), and paper copies will be sent to those indicated as non-registered participants on April 3, 2009.

/s/ Jennifer A. Serafyn
Jennifer A. Serafyn
Assistant U.S. Attorney

-14-