Syllabus

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## ELGIN ET AL. *v.* DEPARTMENT OF THE TREASURY ET AL.

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 11–45.  Argued February 27, 2012—Decided June 11, 2012

The Civil Service Reform Act of 1978 (CSRA) "established a comprehensive system for reviewing personnel action taken against federal employees," *United States* v. *Fausto,* 484 U. S. 439, 455, including removals, 5 U. S. C. §7512. A qualifying employee has the right to a hearing before the Merit Systems Protection Board (MSPB), §§7513(d), 7701(a)(1)–(2), which is authorized to order reinstatement, backpay, and attorney's fees, §§1204(a)(2), 7701(g). An employee who is dissatisfied with the MSPB's decision is entitled to judicial review in the Federal Circuit. §§7703(a)(1), (b)(1).

Petitioners were federal employees discharged pursuant to 5 U. S. C. §3328, which bars from Executive agency employment anyone who has knowingly and willfully failed to register for the Selective Service as required by the Military Selective Service Act, 50 U. S. C. App. §453. Petitioner Elgin challenged his removal before the MSPB, claiming that §3328 is an unconstitutional bill of attainder and unconstitutionally discriminates based on sex when combined with the Military Selective Service Act's male-only registration requirement. The MSPB referred the case to an Administrative Law Judge (ALJ), who dismissed the appeal for lack of jurisdiction, concluding that an employee is not entitled to MSPB review of agency action that is based on an absolute statutory bar to employment. The ALJ also concluded that the MSPB lacked authority to determine the constitutionality of a federal statute. Rather than seeking further MSPB review or appealing to the Federal Circuit, Elgin joined other petitioners raising the same constitutional challenges to their removals in a suit in Federal District Court. The District Court found that it had jurisdiction and denied petitioners' constitutional claims on the

Syllabus

merits. The First Circuit vacated and remanded with instructions to dismiss for lack of jurisdiction. The First Circuit held that petitioners were employees entitled to MSPB review despite the statutory bar to their employment. The court further concluded that challenges to a removal are not exempt from the CSRA review scheme simply because an employee challenges the constitutionality of the statute authorizing the removal.

*Held:* The CSRA precludes district court jurisdiction over petitioners' claims because it is fairly discernible that Congress intended the statute's review scheme to provide the exclusive avenue to judicial review for covered employees who challenge covered adverse employment actions, even when those employees argue that a federal statute is unconstitutional. Pp. 5–20.

   (a) Relying on *Webster* v. *Doe,* 486 U. S. 592, 603, petitioners claim that 28 U. S. C. §1331's general grant of federal-question jurisdiction to district courts remains undisturbed unless Congress explicitly directs otherwise. But *Webster*'s "heightened showing" applies only when a statute purports to "deny any judicial forum for a colorable constitutional claim," 486 U. S., at 603, not when Congress channels judicial review of a constitutional claim to a particular court, see *Thunder Basin Coal Co.* v. *Reich,* 510 U. S. 200. Here, where the claims can be "meaningfully addressed in the" Federal Circuit, *id.,* at 215, the proper inquiry is whether Congress' intent to preclude district court jurisdiction was " 'fairly discernible in the statutory scheme,' " *id.,* at 207. Pp. 5–6.

   (b) It is "fairly discernible" from the CSRA's text, structure, and purpose that Congress precluded district court jurisdiction over petitioners' claims. Pp. 6–12.

    (1) Just as the CSRA's "elaborate" framework demonstrated Congress' intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review in *Fausto,* 484 U. S., at 443, the CSRA indicates that extrastatutory review is not available to those employees to whom the CSRA grants administrative and judicial review. It "prescribes in great detail the protections and remedies applicable to" adverse personnel actions against federal employees, *ibid.,* specifically enumerating the major adverse actions and employee classifications to which the CSRA's procedural protections and review provisions apply, §§7511, 7512, setting out the procedures due an employee prior to final agency action, §7513, and exhaustively detailing the system of review before the MSPB and the Federal Circuit, §§7701, 7703. Petitioners and the Government do not dispute that petitioners are removed employees to whom CSRA review is provided, but petitioners claim that there is an exception to the CSRA review scheme for employees who bring constitutional chal-

lenges to federal statutes; this claim finds no support in the CSRA's text and structure. The availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue. Nothing in the CSRA's text suggests that its exclusive review scheme is inapplicable simply because a covered employee raises a constitutional challenge. And §7703(b)(2)—which expressly exempts from Federal Circuit review challenges alleging that a covered action was based on discrimination prohibited by enumerated federal employment laws—demonstrates that Congress knew how to provide alternative forums for judicial review based on the nature of an employee's claim. Pp. 6–10.

(2) The CSRA's purpose also supports the conclusion that the statutory review scheme is exclusive, even for constitutional challenges. The CSRA's objective of creating an integrated review scheme to replace inconsistent decisionmaking and duplicative judicial review would be seriously undermined if a covered employee could challenge a covered employment action first in a district court, and then again in a court of appeals, simply by challenging the constitutionality of the statutory authorization for the action. Claim-splitting and preclusion doctrines would not necessarily eliminate the possibility of parallel proceedings before the MSPB and the district court, and petitioners point to nothing in the CSRA to support the notion that Congress intended to allow employees to pursue constitutional claims in district court at the expense of forgoing other, potentially meritorious claims before the MSPB. Pp. 10–12.

(c) Petitioners invoke the "presum[ption] that Congress does not intend to limit [district court] jurisdiction if 'a finding of preclusion could foreclose all meaningful judicial review'; if the suit is 'wholly collateral to a statute's review provisions'; and if the claims are 'outside the agency's expertise.' " *Free Enterprise Fund* v. *Public Company Accounting Oversight Bd.*, 561 U. S. ___, ___. But none of those characteristics is present here. Pp. 12–20.

(1) Petitioners' constitutional claims can receive meaningful review within the CSRA scheme even if the MSPB, as it claims, is not authorized to decide a federal law's constitutionality. Their claims can be "meaningfully addressed" in the Federal Circuit, which has held that it can determine the constitutionality of a statute upon which an employee's removal was based, notwithstanding the MSPB's professed lack of authority to decide the question. The CSRA review scheme also fully accommodates the potential need for a factual record. Even without factfinding capabilities, the Federal Circuit may take judicial notice of facts relevant to the constitutional question. If further development is necessary, the CSRA empowers

Syllabus

the MSPB to take evidence and find facts for Federal Circuit review. See 5 U. S. C. §§1204(b)(1)–(2).  Petitioners err in arguing that the MSPB will invariably dismiss a case without ever reaching the fact-finding stage in an appeal such as theirs.  The MSPB may determine that it lacks authority to decide the issue; but absent another infirmity in the adverse action, it will affirm the employing agency's decision.  The Federal Circuit can then review the decision, including any factual record developed by the MSPB.  Petitioners' argument is not illustrated by Elgin's case, which was dismissed on the threshold ground that he was not an "employee" with a right to appeal because his employment was absolutely barred by statute.  Pp. 12–18.

(2) Petitioners' claims are also not "wholly collateral" to the CSRA scheme.  Their constitutional claims are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive lost compensation.  A challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme, and reinstatement, backpay, and attorney's fees are precisely the kinds of relief that the CSRA empowers the MSPB and the Federal Circuit to provide.  Pp. 18–19.

(3) Finally, in arguing that their constitutional claims are not the sort that Congress intended to channel through the MSPB because they are beyond the MSPB's expertise, petitioners overlook the many threshold questions that may accompany a constitutional claim and to which the MSPB can apply its expertise, *e.g.,* whether a resignation, as in petitioner Tucker's case, amounts to a constructive discharge.  Pp. 19–20.

641 F. 3d 6, affirmed.

THOMAS, J., delivered the opinion of the Court, in which ROBERTS, C. J., and SCALIA, KENNEDY, BREYER, and SOTOMAYOR, JJ., joined. ALITO, J., filed a dissenting opinion, in which GINSBURG and KAGAN, JJ., joined.

Opinion of the Court

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–45

_____

## MICHAEL B. ELGIN, ET AL., PETITIONERS v. DEPARTMENT OF THE TREASURY ET AL.

### ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[June 11, 2012]

JUSTICE THOMAS delivered the opinion of the Court.

Under the Civil Service Reform Act of 1978 (CSRA), 5 U. S. C. §1101 *et seq.,* certain federal employees may obtain administrative and judicial review of specified adverse employment actions. The question before us is whether the CSRA provides the exclusive avenue to judicial review when a qualifying employee challenges an adverse employment action by arguing that a federal statute is unconstitutional. We hold that it does.

I

The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *United States* v. *Fausto,* 484 U. S. 439, 455 (1988). As relevant here, Subchapter II of Chapter 75 governs review of major adverse actions taken against employees "for such cause as will promote the efficiency of the service." 5 U. S. C. §§7503(a), 7513(a). Employees entitled to review are those in the "competitive service" and "excepted service" who meet certain requirements regarding proba-

tionary periods and years of service.[1]  §7511(a)(1).  The re-
viewable agency actions are removal, suspension for more
than 14 days, reduction in grade or pay, or furlough for 30
days or less.  §7512.

When an employing agency proposes a covered action
against a covered employee, the CSRA gives the employee
the right to notice, representation by counsel, an oppor-
tunity to respond, and a written, reasoned decision from
the agency.  §7513(b).  If the agency takes final adverse
action against the employee, the CSRA gives the employee
the right to a hearing and to be represented by an attor-
ney or other representative before the Merit Systems Pro-
tection Board (MSPB).  §§7513(d), 7701(a)(1)–(2).  The
MSPB is authorized to order relief to prevailing employ-
ees, including reinstatement, backpay, and attorney's fees.
§§1204(a)(2), 7701(g).

An employee who is dissatisfied with the MSPB's deci-
sion is entitled to judicial review in the United States
Court of Appeals for the Federal Circuit.  That court "shall
review the record and hold unlawful and set aside any
agency action, findings, or conclusions" that are "arbitrary,
capricious, an abuse of discretion, or otherwise not in
accordance with law," "obtained without procedures re-

---

[1] The CSRA divides civil service employees into three main catego-
ries.  *Fausto,* 484 U. S., at 441, n. 1.  "Senior Executive Service" em-
ployees occupy high-level positions in the Executive Branch but are not
required to be appointed by the President and confirmed by the Senate.
5 U. S. C. §3131(2).  "[C]ompetitive service" employees—the relevant
category for purposes of this case—are all other Executive Branch
employees whose nomination by the President and confirmation by the
Senate are not required and who are not specifically excepted from the
competitive service by statute.  §2102(a)(1).  The competitive service
also includes employees in other branches of the Federal Govern-
ment and in the District of Columbia government who are specifically
included by statute.  §§2102(a)(2)–(3).  Finally, "excepted service"
employees are employees who are not in the Senior Executive Service
or in the competitive service.  §2103.

quired by law, rule, or regulation having been followed," or "unsupported by substantial evidence." §§7703(a)(1), (c). The Federal Circuit has "exclusive jurisdiction" over appeals from a final decision of the MSPB. 28 U. S. C. §1295(a)(9); see also 5 U. S. C. §7703(b)(1) (judicial review of an MSPB decision "shall be" in the Federal Circuit).

## II

Petitioners are former federal competitive service employees who failed to comply with the Military Selective Service Act, 50 U. S. C. App. §453. That Act requires male citizens and permanent-resident aliens of the United States between the ages of 18 and 26 to register for the Selective Service. Another federal statute, 5 U. S. C. §3328 (hereinafter Section 3328), bars from employment by an Executive agency anyone who has knowingly and willfully failed to register. Pursuant to Section 3328, petitioners were discharged (or allegedly constructively discharged) by respondents, their employing agencies.

Among petitioners, only Michael Elgin appealed his removal to the MSPB. Elgin argued that Section 3328 is an unconstitutional bill of attainder and unconstitutionally discriminates on the basis of sex when combined with the registration requirement of the Military Selective Service Act. The MSPB referred Elgin's appeal to an administrative law judge (ALJ) for an initial decision.[2] The ALJ dismissed the appeal for lack of jurisdiction, concluding that an employee is not entitled to MSPB review of agency action that is based on an absolute statutory bar to employment. App. to Pet. for Cert. 100a–101a. The ALJ also held that Elgin's constitutional claims could not "confer jurisdiction" on the MSPB because it "lacks authority to determine the constitutionality of a statute."

---

[2] See §7701(b)(1) (authorizing referral of MSPB appeals to an ALJ); 5 CFR §§1201.111–1201.114 (2011) (detailing procedures for an initial decision by an ALJ and review by the MSPB).

*Id.,* at 101a.

Elgin neither petitioned for review by the full MSPB nor appealed to the Federal Circuit.  Instead, he joined the other petitioners in filing suit in the United States District Court for the District of Massachusetts, raising the same constitutional challenges to Section 3328 and the Military Selective Service Act.  App. 4, 26–28, 29.  Petitioners sought equitable relief in the form of a declaratory judgment that the challenged statutes are unconstitutional, an injunction prohibiting enforcement of Section 3328, reinstatement to their former positions, backpay, benefits, and attorney's fees.  *Id.,* at 29–30.

The District Court rejected respondents' argument that it lacked jurisdiction and denied petitioners' constitutional claims on the merits.  See *Elgin* v. *United States,* 697 F. Supp. 2d 187 (Mass. 2010).  The District Court held that the CSRA did not preclude it from hearing petitioners' claims, because the MSPB had no authority to determine the constitutionality of a federal statute.  *Id.,* at 193.  Hence, the District Court concluded that it retained jurisdiction under the general grant of federal-question jurisdiction in 28 U. S. C. §1331.  697 F. Supp. 2d, at 194.

The United States Court of Appeals for the First Circuit vacated the judgment and remanded with instructions to dismiss for lack of jurisdiction.  See 641 F. 3d 6 (2011).  The Court of Appeals held that challenges to a removal are not exempted from the CSRA review scheme simply because the employee argues that the statute authorizing the removal is unconstitutional.  *Id.,* at 11–12.  According to the Court of Appeals, the CSRA provides a forum—the Federal Circuit—that may adjudicate the constitutionality of a federal statute, and petitioners "were obliged to use it."  *Id.,* at 12–13.

We granted certiorari to decide whether the CSRA precludes district court jurisdiction over petitioners' claims even though they are constitutional claims for equitable

Opinion of the Court

relief.  See 565 U. S. ___ (2011).  We conclude that it does, and we therefore affirm.

## III

We begin with the appropriate standard for determining whether a statutory scheme of administrative and judicial review provides the exclusive means of review for constitutional claims.  Petitioners argue that even if they may obtain judicial review of their constitutional claims before the Federal Circuit, they are not precluded from pursuing their claims in federal district court.  According to petitioners, the general grant of federal-question jurisdiction in 28 U. S. C. §1331, which gives district courts authority over constitutional claims, remains undisturbed unless Congress explicitly directs otherwise.  In support of this argument, petitioners rely on *Webster* v. *Doe,* 486 U. S. 592, 603 (1988), which held that "where Congress intends to preclude judicial review of constitutional claims[,] its intent to do so must be clear."  The *Webster* Court noted that this "heightened showing" was required "to avoid the 'serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim."  *Ibid.* (quoting *Bowen* v. *Michigan Academy of Family Physicians,* 476 U. S. 667, 681, n. 12 (1986)).  Petitioners contend that the CSRA does not meet this standard because it does not expressly bar suits in district court.

Petitioners' argument overlooks a necessary predicate to the application of *Webster*'s heightened standard: a statute that purports to "deny any judicial forum for a colorable constitutional claim."  486 U. S., at 603.  *Webster*'s standard does not apply where Congress simply channels judicial review of a constitutional claim to a particular court.  We held as much in *Thunder Basin Coal Co.* v. *Reich,* 510 U. S. 200 (1994).  In that case, we considered whether a statutory scheme of administrative review followed by

judicial review in a federal appellate court precluded district court jurisdiction over a plaintiff's statutory and constitutional claims. *Id.,* at 206. We noted that the plaintiff's claims could be "meaningfully addressed in the Court of Appeals" and that the case therefore did "not present the 'serious constitutional question' that would arise if an agency statute were construed to preclude all judicial review of a constitutional claim." *Id.,* at 215, and n. 20 (quoting *Bowen, supra,* at 681, n. 12). Accordingly, we did not require *Webster*'s "heightened showing," but instead asked only whether Congress' intent to preclude district court jurisdiction was "'fairly discernible in the statutory scheme.'" 510 U. S., at 207 (quoting *Block* v. *Community Nutrition Institute,* 467 U. S. 340, 351 (1984)).

Like the statute in *Thunder Basin,* the CSRA does not foreclose all judicial review of petitioners' constitutional claims, but merely directs that judicial review shall occur in the Federal Circuit. Moreover, as we explain below, the Federal Circuit is fully capable of providing meaningful review of petitioners' claims. See *infra,* at 12–17. Accordingly, the appropriate inquiry is whether it is "fairly discernible" from the CSRA that Congress intended covered employees appealing covered agency actions to proceed exclusively through the statutory review scheme, even in cases in which the employees raise constitutional challenges to federal statutes.

## IV

To determine whether it is "fairly discernible" that Congress precluded district court jurisdiction over petitioners' claims, we examine the CSRA's text, structure, and purpose. See *Thunder Basin, supra*, at 207; *Fausto,* 484 U. S., at 443.

## A

This is not the first time we have addressed the impact

Opinion of the Court

of the CSRA's text and structure on the availability of judicial review of a federal employee's challenge to an employment decision.  In *Fausto,* we considered whether a so-called "nonpreference excepted service employe[e]" could challenge his suspension in the United States Claims Court, even though the CSRA did not then afford him a right to review in the MSPB or the Federal Circuit.[3] *Id.,* at 440–441, 448.  Citing "[t]he comprehensive nature of the CSRA, the attention that it gives throughout to the rights of nonpreference excepted service employees, and the fact that it does not include them in provisions for administrative and judicial review contained in Chapter 75," the Court concluded that "the absence of provision for these employees to obtain judicial review" was a "considered congressional judgment."  *Id.,* at 448.  The Court thus found it "fairly discernible" that Congress intended to preclude all judicial review of Fausto's statutory claims.[4] *Id.,* at 452 (citing *Block, supra,* at 349).

Just as the CSRA's "elaborate" framework, 484 U. S., at 443, demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA *denies* statutory review, it similarly indicates that extrastatutory review is not available to those employees to whom the CSRA *grants* administrative and judicial review.  Indeed, in *Fausto* we expressly assumed that "competitive service employees, who *are* given review rights by Chapter 75, cannot expand these rights by resort to" judicial review outside of the CSRA scheme.  See *id.,* at 450, n. 3.  As *Fausto* explained, the CSRA "prescribes in great detail the protections and remedies applicable to" adverse personnel

—————————

[3] Certain veterans and their close relatives are considered "preference eligible" civil service employees.  *Fausto,* 484 U. S., at 441, n. 1.

[4] Although *Fausto* interpreted the CSRA to entirely foreclose judicial review, the Court had no need to apply a heightened standard like that applied in *Webster* v. *Doe,* 486 U. S. 592 (1988), because Fausto did not press any constitutional claims.

actions against federal employees. *Id.,* at 443. For example, Subchapter II of Chapter 75, the portion of the CSRA relevant to petitioners, specifically enumerates the major adverse actions and employee classifications to which the CSRA's procedural protections and review provisions apply. 5 U. S. C. §§7511, 7512. The subchapter then sets out the procedures due an employee prior to final agency action. §7513. And, Chapter 77 of the CSRA exhaustively details the system of review before the MSPB and the Federal Circuit. §§7701, 7703; see also *Fausto, supra,* at 449 (emphasizing that the CSRA's structure evinces "the primacy" of review by the MSPB and the Federal Circuit). Given the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions, it is fairly discernible that Congress intended to deny such employees an additional avenue of review in district court.

Petitioners do not dispute that they are employees who suffered adverse actions covered by the foregoing provisions of the CSRA. Nor do they contest that the CSRA's text and structure support implied preclusion of district court jurisdiction, at least as a general matter. Petitioners even acknowledge that the MSPB routinely adjudicates some constitutional claims, such as claims that an agency took adverse employment action in violation of an employee's First or Fourth Amendment rights, and that these claims must be brought within the CSRA scheme. See Brief for Petitioners 33; Tr. of Oral Arg. 7–11, 15, 21; see also, *e.g., Smith* v. *Department of Transp.,* 106 MSPR 59, 78–79 (2007) (applying *Pickering* v. *Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U. S. 563 (1968), to an employee's claim that he was suspended in retaliation for the exercise of his First Amendment rights); *Garrison* v. *Department of Justice,* 67 MSPR 154 (1995) (considering whether an order directing an employee to submit to a drug test was reasonable under the Fourth

Opinion of the Court

Amendment). Nevertheless, petitioners seek to carve out an exception to CSRA exclusivity for facial or as-applied constitutional challenges to federal statutes.

The text and structure of the CSRA, however, provide no support for such an exception. The availability of administrative and judicial review under the CSRA generally turns on the type of civil service employee and adverse employment action at issue. See, *e.g.,* 5 U. S. C. §§7511(a)(1) (defining "employee"), 7512 (defining "[a]ctions covered"), 7513(d) (providing that "[a]n employee against whom an action is taken under this section is entitled to appeal to the Merit Systems Protection Board"), 7703(a)(1) (providing that "[a]ny employee . . . adversely affected or aggrieved by a final order or decision of the Merit Systems Protection Board may obtain judicial review of the order or decision" in the Federal Circuit). Nothing in the CSRA's text suggests that its exclusive review scheme is inapplicable simply because a covered employee challenges a covered action on the ground that the statute authorizing that action is unconstitutional. As the Government correctly notes, "[t]he plain language of [the CSRA's] provisions applies to an employee who challenges his removal on the ground that the statute requiring it is unconstitutional no less than it applies to an employee who challenges his removal on any other ground." Brief for Respondents 33–34.

In only one situation does the CSRA expressly exempt a covered employee's appeal of a covered action from Federal Circuit review based on the type of claim at issue. When a covered employee "alleges that a basis for the action was discrimination" prohibited by enumerated federal employment laws, 5 U. S. C. §7702(a)(1)(B), the CSRA allows the employee to obtain judicial review of an unfavorable MSPB decision by filing a civil action as provided by the applicable employment law. See §7703(b)(2). Each of the cross-referenced employment laws authorizes an action

Opinion of the Court

in federal district court.  See 42 U. S. C. §2000e–5(f); 29
U. S. C. §633a(c); §216(b).  Title 5 U. S. C. §7703(b)(2)
demonstrates that Congress knew how to provide alterna-
tive forums for judicial review based on the nature of an
employee's claim.  That Congress declined to include an
exemption from Federal Circuit review for challenges to
a statute's constitutionality indicates that Congress in-
tended no such exception.

B

The purpose of the CSRA also supports our conclusion
that the statutory review scheme is exclusive, even for
employees who bring constitutional challenges to federal
statutes.  As we have previously explained, the CSRA's
"integrated scheme of administrative and judicial review"
for aggrieved federal employees was designed to replace
an "'outdated patchwork of statutes and rules'" that af-
forded employees the right to challenge employing agency
actions in district courts across the country.  *Fausto*, 484
U. S., at 444–445.  Such widespread judicial review, which
included appeals in all of the Federal Courts of Appeals
produced "wide variations in the kinds of decisions . . .
issued on the same or similar matters" and a double layer
of judicial review that was "wasteful and irrational." *Id.,*
at 445 (internal quotation marks omitted).

The CSRA's objective of creating an integrated scheme
of review would be seriously undermined if, as petitioners
would have it, a covered employee could challenge a cov-
ered employment action first in a district court, and then
again in one of the courts of appeals, simply by alleging
that the statutory authorization for such action is uncon-
stitutional.  Such suits would reintroduce the very po-
tential for inconsistent decisionmaking and duplicative
judicial review that the CSRA was designed to avoid.
Moreover, petitioners' position would create the possibility
of parallel litigation regarding the same agency action

Opinion of the Court

before the MSPB and a district court.  An employee could challenge the constitutionality of the statute authorizing an agency's action in district court, but the MSPB would remain the exclusive forum for other types of challenges to the agency's decision.  See Tr. of Oral Arg. 4–7, 9, 15–16.

Petitioners counter that doctrines regarding claim splitting and preclusion would bar parallel suits before the MSPB and the district court.  But such doctrines would not invariably eliminate the possibility of simultaneous proceedings, for a tribunal generally has discretion to decide whether to dismiss a suit when a similar suit is pending elsewhere.  See 18 C. Wright et al., Federal Practice and Procedure §4406 (2d ed. 2002 and Supp. 2011).  In any event, petitioners point to nothing in the CSRA to support the odd notion that Congress intended to allow employees to pursue constitutional claims in district court at the cost of forgoing other, potentially meritorious claims before the MSPB.

Finally, we note that a jurisdictional rule based on the nature of an employee's constitutional claim would deprive the aggrieved employee, the MSPB, and the district court of clear guidance about the proper forum for the employee's claims at the outset of the case.  For example, petitioners contend that facial and as-applied constitutional challenges to statutes may be brought in district court, while other constitutional challenges must be heard by the MSPB.  See *supra,* at 8–9; *infra,* at 13, n. 5.  But, as we explain below, that line is hazy at best and incoherent at worst.  See *ibid.*  The dissent's approach fares no better.  The dissent carves out for district court adjudication only facial constitutional challenges to statutes, but we have previously stated that "the distinction between facial and as-applied challenges is not so well defined that it has some automatic effect or that it must always control the pleadings and disposition in every case involving a constitutional challenge."  *Citizens United* v. *Federal Election*

Opinion of the Court

*Comm'n*, 558 U. S. ___, ___ (2010) (slip op., at 14).   By
contrast, a jurisdictional rule based on the type of em-
ployee and adverse agency action at issue does not involve
such amorphous distinctions.   Accordingly, we conclude
that the better interpretation of the CSRA is that its
exclusivity does not turn on the constitutional nature of an
employee's claim, but rather on the type of the employee
and the challenged employment action.

V

Petitioners raise three additional factors in arguing that
their claims are not the type that Congress intended to be
reviewed within the CSRA scheme.   Specifically, petition-
ers invoke our "presum[ption] that Congress does not
intend to limit [district court] jurisdiction if 'a finding
of preclusion could foreclose all meaningful judicial re-
view'; if the suit is 'wholly collateral to a statute's review
provisions'; and if the claims are 'outside the agency's
expertise.'"   *Free Enterprise Fund* v. *Public Company
Accounting Oversight Bd.*, 561 U. S. ___, ___ (2010) (slip
op., at 8) (quoting *Thunder Basin,* 510 U. S., at 212–213).
Contrary to petitioners' suggestion, none of those charac-
teristics are present here.

A

First, petitioners argue that the CSRA review scheme
provides no meaningful review of their claims because the
MSPB lacks authority to declare a federal statute un-
constitutional.   Petitioners are correct that the MSPB
has repeatedly refused to pass upon the constitutionality of
legislation.   See, *e.g., Malone* v. *Department of Justice,* 13
M. S. P. B. 81, 83 (1983) ("[I]t is well settled that adminis-
trative agencies are without authority to determine the
constitutionality of statutes").   This Court has also stated
that "adjudication of the constitutionality of congressional
enactments has generally been thought beyond the juris-

Opinion of the Court

diction of administrative agencies." *Thunder Basin,* 510 U. S., at 215 (internal quotation marks and brackets omitted).[5]

We need not, and do not, decide whether the MSPB's view of its power is correct, or whether the oft-stated principle that agencies cannot declare a statute unconstitutional is truly a matter of jurisdiction. See *ibid.* (describing this rule as "not mandatory"). In *Thunder Basin,* we held that Congress' intent to preclude district court jurisdiction was fairly discernible in the statutory scheme "[e]ven if" the administrative body could not decide the constitutionality of a federal law. *Ibid.* That issue, we reasoned, could be "meaningfully addressed in the Court of Appeals" that Congress had authorized to conduct judicial review. *Ibid.*[6] Likewise, the CSRA provides re-

_____

[5]According to petitioners, the MSPB can decide claims that an agency violated an employee's First or Fourth Amendment rights (and those claims consequently must be brought within the CSRA scheme), *supra,* at 8–9, because such claims allege only that an agency "acted in an unconstitutional manner" and do not challenge the constitutionality of a federal statute either facially or as applied. See Tr. of Oral Arg. 10, 21. That distinction is dubious at best. Agencies are created by and act pursuant to statutes. Thus, unless an action is beyond the scope of the agency's statutory authority, an employee's claim that the agency "acted in an unconstitutional manner" will generally be a claim that the statute authorizing the agency action was unconstitutionally applied to him. See, *e.g., Pickering* v. *Board of Ed. of Township High School Dist. 205, Will Cty.,* 391 U. S. 563, 565 (1968) (holding that the statute authorizing a government employee's termination was unconstitutional as applied under the First and Fourteenth Amendments where the employee was fired because of his speech). In any event, the curious line that petitioners draw only highlights the weakness of their position, for it certainly is not "fairly discernible" from the CSRA's text, structure, or purpose that the statutory review scheme is exclusive for so-called "unconstitutional manner" claims but not for facial or as-applied constitutional challenges to statutes. See *supra,* at 7–11.

[6]The dissent misreads *Thunder Basin.* The dissent contends that the "heart of the preclusion analysis" in *Thunder Basin* involved statutory claims reviewable by the administrative body and that the "only consti-

Opinion of the Court

view in the Federal Circuit, an Article III court fully competent to adjudicate petitioners' claims that Section 3328 and the Military Selective Service Act's registration requirement are unconstitutional.

Petitioners insist, however, that the Federal Circuit cannot decide their constitutional claims either. Emphasizing the Federal Circuit's holdings that its jurisdiction over employee appeals is coextensive with the MSPB's jurisdiction, petitioners argue that the Federal Circuit likewise lacks jurisdiction to decide their challenge to the constitutionality of a federal statute. Petitioners are incorrect.

As we have explained, the CSRA makes MSPB jurisdiction over an appeal dependent only on the nature of the employee and the employment action at issue. See *supra,* at 1–2, 8–9; see also 5 CFR §1201.3(a) (stating that "[t]he Board has jurisdiction over appeals from agency actions" and enumerating covered actions); *Todd* v. *Merit Systems Protection Bd.*, 55 F. 3d 1574, 1576 (CA Fed. 1995) (explaining that the employee "has the burden of establishing that she and the action she seeks to appeal [are] within the [MSPB's] jurisdiction"). Accordingly, as the cases cited by petitioners demonstrate, the Federal Circuit has ques-

———————

tutional issue" was decided by this Court "'not on preclusion grounds but on the merits.'" *Post,* at 10 (opinion of ALITO, J.) (quoting 510 U. S., at 219 (SCALIA, J., concurring in part and concurring in judgment)). To be sure, the *Thunder Basin* Court did decide the merits of the petitioner's "second constitutional challenge," namely whether the Court's finding of preclusion was itself unconstitutional. See *id.,* at 219–221, and n. (same); see also *id.,* at 216 (describing this "alternative" argument). But the petitioner's suit also included another constitutional claim: a due process challenge to a statute that permitted a regulatory agency, before a hearing, to immediately fine the petitioner for noncompliance with the statute. See Brief for Petitioner in *Thunder Basin Coal Co.* v. *Reich,* O. T. 1993, No. 92–896, p. 13. The Court expressly found that the statutory review scheme precluded district court jurisdiction over that constitutional claim. See 510 U. S., at 214–216.

Opinion of the Court

tioned its jurisdiction when an employee appeals from a type of adverse action over which the MSPB lacked jurisdiction.[7]   But the Federal Circuit has never held, in an appeal from agency action within the MSPB's jurisdiction, that its authority to decide particular legal questions is derivative of the MSPB's authority.   To the contrary, in *Briggs* v. *MSPB,* 331 F. 3d 1307, 1312–1313 (2003), the Federal Circuit concluded that it could determine the constitutionality of a statute upon which an employee's removal was based, notwithstanding the MSPB's professed lack of authority to decide the question.[8]

   Petitioners next contend that even if the Federal Circuit could consider their claims in the first instance, resolution of the claims requires a factual record that neither the MSPB (because it lacks authority to decide the legal question) nor the Federal Circuit (because it is an appellate court) can create.   To the contrary, we think the CSRA review scheme fully accommodates an employee's potential need to establish facts relevant to his constitutional

––––––––––

   [7]See *Schmittling* v. *Department of Army,* 219 F. 3d 1332, 1336 (CA Fed. 2000) (remanding for MSPB to determine if employee suffered a prohibited personnel action within the scope of its jurisdiction); *Perez* v. *MSPB,* 931 F. 2d 853, 855 (CA Fed. 1991) (action against employee was not suspension within MSPB's jurisdiction); *Manning* v. *MSPB*, 742 F. 2d 1424, 1425–1427 (CA Fed. 1984) (reassignment of employee was not an adverse action within MSPB's jurisdiction); *Rosano* v. *Department of Navy,* 699 F. 2d 1315 (CA Fed. 1983) (refusal to prorate employee's health insurance premiums was not an adverse action within MSPB's jurisdiction).
   [8]It is not unusual for an appellate court reviewing the decision of an administrative agency to consider a constitutional challenge to a federal statute that the agency concluded it lacked authority to decide.   See, *e.g., Preseault* v. *ICC,* 853 F. 2d 145, 148–149 (CA2 1988) (provision of the National Trails System Act Amendments of 1983), aff'd on other grounds, 494 U. S. 1 (1990); *Reid* v. *Engen,* 765 F. 2d 1457, 1460–1461 (CA9 1985) (provision of the Federal Aviation Act of 1958); *Chadha* v. *INS,* 634 F. 2d 408, 411, 413 (CA9 1980) (provision of the Immigration and Nationality Act), aff'd, 462 U. S. 919 (1983).

challenge to a federal statute.  Even without factfinding capabilities, the Federal Circuit may take judicial notice of facts relevant to the constitutional question.  See, *e.g., Rothe Development Corp.* v. *Department of Defense,* 545 F. 3d 1023, 1045–1046 (CA Fed. 2008) (judicially noticing facts relevant to equal protection challenge).  And, if resolution of a constitutional claim requires the development of facts beyond those that the Federal Circuit may judicially notice, the CSRA empowers the MSPB to take evidence and find facts for Federal Circuit review.  See 5 U. S. C. §§1204(b)(1)–(2) (providing that the MSPB may administer oaths, examine witnesses, take depositions, issue interrogatories, subpoena testimony and documents, and otherwise receive evidence when a covered employee appeals a covered adverse employment action).  Unlike petitioners, we see nothing extraordinary in a statutory scheme that vests reviewable factfinding authority in a non-Article III entity that has jurisdiction over an action but cannot finally decide the legal question to which the facts pertain.  Congress has authorized magistrate judges, for example, to conduct evidentiary hearings and make findings of fact relevant to dispositive pretrial motions, although they are powerless to issue a final ruling on such motions.  See 28 U. S. C. §§636(b)(1)(A)–(B); *United States* v. *Raddatz,* 447 U. S. 667, 673 (1980).[9]

––––––––

[9]The dissent argues that the MSPB may struggle to determine what facts are relevant to the constitutional question, given that it will not decide the claim.  See *post,* at 11.  But the MSPB's professed lack of authority to declare a statute unconstitutional does not mean that the MSPB cannot identify the legal principles that govern the constitutional analysis and thus the scope of necessary development of the factual record.  The MSPB routinely identifies the relevant constitutional framework from federal court decisions when deciding other constitutional claims.  See *supra,* at 8–9 (citing First and Fourth Amendment cases); see also, *e.g., Fitzgerald* v. *Department of Defense,* 80 MSPR 1, 14–15 (1998) (analyzing a claim under the Due Process Clauses of the Fifth and Fourteenth Amendments).  We therefore see little reason to

Opinion of the Court

Petitioners nonetheless insist that the MSPB will never reach the factfinding stage in an appeal challenging the constitutionality of a federal statute, pointing to the ALJ's dismissal for lack of jurisdiction in petitioner Elgin's case. Again, petitioners are incorrect. When a covered employee appeals a covered adverse action, the CSRA grants the MSPB jurisdiction over the appeal. See *supra,* at 14. If the employee attacks the adverse action on the ground that a statute is unconstitutional, the MSPB may determine that it lacks authority to decide that particular issue; but absent another infirmity in the adverse action, the MSPB will affirm the employing agency's decision rather than dismiss the appeal. See, *e.g., Briggs, supra,* at 1311. The Federal Circuit can then review the MSPB decision, including any factual record developed by the MSPB in the course of its decision on the merits.

Contrary to petitioners' suggestion, Elgin's case does not illustrate that the MSPB will invariably dismiss an appeal challenging the constitutionality of a federal statute before reaching the factfinding stage. The ALJ dismissed Elgin's case on the threshold jurisdictional ground that he was not an "employee" with a right to appeal to the MSPB because his employment was absolutely barred by statute. See App. to Pet. for Cert. 100a–101a. The Government conceded before the First Circuit that this jurisdictional argument was incorrect, see Brief for United States 10, and the Court of Appeals agreed, see 641 F. 3d, at 10–11. The parties do not raise that issue here, and we do not address it. What matters for present purposes is that the particular circumstances of Elgin's case do not demonstrate that the MSPB will dismiss an appeal that is otherwise within its jurisdiction merely because it lacks the

_____

credit the dissent's prediction that our holding will result in a complicated back and forth between a befuddled MSPB and the Federal Circuit.

Opinion of the Court

authority to decide a particular claim.[10]

In sum, the CSRA grants the MSPB and the Federal Circuit jurisdiction over petitioners' appeal because they are covered employees challenging a covered adverse employment action. Within the CSRA review scheme, the Federal Circuit has authority to consider and decide petitioners' constitutional claims. To the extent such challenges require factual development, the CSRA equips the MSPB with tools to create the necessary record. Thus, petitioners' constitutional claims can receive meaningful review within the CSRA scheme.[11]

## B

Petitioners next contend that the CSRA does not preclude district court jurisdiction over their claims because they are "wholly collateral" to the CSRA scheme. According to petitioners, their bill-of-attainder and sex discrimination claims "have nothing to do with the types of day-to-day personnel actions adjudicated by the MSPB," Brief for Petitioners 29, and petitioners "are not seeking the CSRA's 'protections and remedies.'" Reply Brief for Petitioners 3. We disagree.

———————

[10] Before this Court, the Government again conceded the error of its argument that Elgin is not an "employee" within the MSPB's jurisdiction and indicated that it would support a motion by Elgin to reopen his case before the MSPB. See Tr. of Oral Arg. 32.

[11] The dissent cites *McNary* v. *Haitian Refugee Center, Inc.,* 498 U. S. 479 (1991), for the "basic principle," *post,* at 8, that preclusion cannot be inferred when "'the administrative appeals process does not address the kind of . . . constitutional claims' at issue." See *post,* at 7–8 (quoting *McNary,* 498 U. S., at 493). But that statement from *McNary* was not a reference to an administrative body's inability to decide a constitutional claim. Rather, *McNary* was addressing a statutory review scheme that provided no opportunity for the plaintiffs to develop a factual record relevant to their constitutional claims before the administrative body and then restricted judicial review to the administrative record created in the first instance. *Ibid.* As we have explained, the CSRA review process is not similarly limited. See *supra,* at 15.

Opinion of the Court

As evidenced by their district court complaint, petition-ers' constitutional claims are the vehicle by which they seek to reverse the removal decisions, to return to federal employment, and to receive the compensation they would have earned but for the adverse employment action. See App. 29–30. A challenge to removal is precisely the type of personnel action regularly adjudicated by the MSPB and the Federal Circuit within the CSRA scheme. Likewise, reinstatement, backpay, and attorney's fees are precisely the kinds of relief that the CSRA empowers the MSPB and the Federal Circuit to provide. See *supra,* at 2; see also *Heckler* v. *Ringer*, 466 U. S. 602, 614 (1984) (holding that plaintiffs' claims were not wholly collateral to a statutory scheme of administrative and judicial review of Medicare payment decisions, where plaintiffs' constitutional and statutory challenge to an agency's procedure for reaching payment decisions was "at bottom" an attempt to reverse the agency's decision to deny payment). Far from a suit wholly collateral to the CSRA scheme, the case before us is a challenge to CSRA-covered employment action brought by CSRA-covered employees requesting relief that the CSRA routinely affords.

C

Relatedly, petitioners argue that their constitutional claims are not the sort that Congress intended to channel through the MSPB because they are outside the MSPB's expertise. But petitioners overlook the many threshold questions that may accompany a constitutional claim and to which the MSPB can apply its expertise. Of particular relevance here, preliminary questions unique to the em-ployment context may obviate the need to address the constitutional challenge. For example, petitioner Henry Tucker asserts that his resignation amounted to a con-structive discharge. That issue falls squarely within the MSPB's expertise, and its resolution against Tucker would

Opinion of the Court

avoid the need to reach his constitutional claims.  In addition, the challenged statute may be one that the MSPB regularly construes, and its statutory interpretation could alleviate constitutional concerns.  Or, an employee's appeal may involve other statutory or constitutional claims that the MSPB routinely considers, in addition to a constitutional challenge to a federal statute.  The MSPB's resolution of those claims in the employee's favor might fully dispose of the case.  Thus, because the MSPB's expertise can otherwise be "brought to bear" on employee appeals that challenge the constitutionality of a statute, we see no reason to conclude that Congress intended to exempt such claims from exclusive review before the MSPB and the Federal Circuit.  See *Thunder Basin,* 510 U. S., at 214–215 (concluding that, where administrative Commission's expertise "could be brought to bear" on appeal, Commission's exclusive review of alleged statutory violation was appropriate despite its lack of expertise in interpreting a particular statute (internal quotation marks and brackets omitted)).

*        *        *

For the foregoing reasons, we conclude that it is fairly discernible that the CSRA review scheme was intended to preclude district court jurisdiction over petitioners' claims.  The judgment of the Court of Appeals is affirmed.

*It is so ordered.*

ALITO, J., dissenting

# SUPREME COURT OF THE UNITED STATES

_____

No. 11–45

_____

## MICHAEL B. ELGIN, ET AL., PETITIONERS *v.* DEPARTMENT OF THE TREASURY ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[June 11, 2012]

JUSTICE ALITO, with whom JUSTICE GINSBURG and JUSTICE KAGAN join, dissenting.

Petitioners are former federal employees who were discharged for failing to register for the military draft as required under 5 U. S. C. §3328. They filed a putative class-action suit in Federal District Court, arguing that the registration requirement is facially unconstitutional because it discriminates on the basis of gender and operates as a bill of attainder. Their complaint sought back-pay as well as declaratory and injunctive relief reinstating their employment and preventing the Government from enforcing §3328 against them.

The Court affirms the dismissal of petitioners' suit on the ground that the Civil Service Reform Act (CSRA) provides an exclusive administrative remedy for claims of wrongful termination brought by covered federal employees. Because the CSRA provides an avenue for employees to pursue their grievances through the Merit Systems Protection Board, the majority concludes, Congress must have intended to remove petitioners' claims from the ordinary ambit of the federal courts.

The problem with the majority's reasoning is that petitioners' constitutional claims are a far cry from the type of claim that Congress intended to channel through the Board. The Board's mission is to adjudicate fact-specific

ALITO, J., dissenting

employment disputes within the existing statutory frame-
work. By contrast, petitioners argue that one key provi-
sion of that framework is facially unconstitutional. Not
only does the Board lack authority to adjudicate facial
constitutional challenges, but such challenges are wholly
collateral to the type of claims that the Board is author-
ized to hear.

The majority attempts to defend its holding by noting
that, although the Board cannot consider petitioners'
claims, petitioners may appeal from the Board to the
Federal Circuit, which *does* have authority to address
facial constitutional claims. But that does not cure the
oddity of requiring such claims to be filed initially before
the Board, which can do nothing but pass them along
unaddressed, leaving the Federal Circuit to act as a court
of first review, but with little capacity for factfinding.

Because I doubt that Congress intended to channel
petitioners' constitutional claims into an administrative
tribunal that is powerless to decide them, I respectfully
dissent.

I

As a general matter, federal district courts have "origi-
nal jurisdiction of all civil actions arising under the Con-
stitution, laws, or treaties of the United States." 28
U. S. C. §1331. Under this provision, it has long been
"established practice for this Court to sustain the jurisdic-
tion of federal courts to issue injunctions to protect rights
safeguarded by the Constitution." *Bell* v. *Hood*, 327 U. S.
678, 684 (1946). In light of §1331, the question is not
whether Congress has specifically conferred jurisdiction,
but whether it has taken it away. See *Whitman* v. *De-
partment of Transportation*, 547 U. S. 512, 514 (2006)
*(per curiam)*.

Congress may remove certain claims from the general
jurisdiction of the federal courts in order to channel these

ALITO, J., dissenting

claims into a system of statutory review. For example, in *Shalala* v. *Illinois Council on Long Term Care, Inc.*, 529 U. S. 1 (2000), we considered a clause providing that "no action . . . to recover on any claim" arising under the Medicare laws "shall be brought under section 1331 . . . of title 28," *id.*, at 5 (quoting 42 U. S. C. §405(h) (brackets omitted)). When dealing with an express preclusion clause like this, we determine the scope of preclusion simply by interpreting the words Congress has chosen.

We have also recognized that preclusion can be implied. When Congress creates an administrative process to handle certain types of claims, it impliedly removes those claims from the ordinary jurisdiction of the federal courts. Under these circumstances, the test is whether "the 'statutory scheme' displays a 'fairly discernible' intent to limit jurisdiction and the claims at issue 'are of the type Congress intended to be reviewed within th[e] statutory structure.'" *Free Enterprise Fund* v. *Public Company Accounting Oversight Bd.*, 561 U. S. ___, ___ (2010) (slip op., at 8) (quoting *Thunder Basin Coal Co.* v. *Reich*, 510 U. S. 200, 207, 212 (1994); alteration in *Free Enterprise*). In making this determination, we look to "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review" through the alternative administrative process that Congress has established. *Thunder Basin*, *supra,* at 207 (citation omitted).

We have emphasized two important factors for determining whether Congress intended an agency to have exclusive original jurisdiction over a claim. The first is whether the claim falls within the agency's area of expertise, which would give the agency a comparative advantage over the courts in resolving the claim. "Generally, when Congress creates procedures 'designed to permit agency expertise to be brought to bear on particular problems,' those procedures 'are to be exclusive.'" *Free Enter-*

prise Fund, supra, at ___(slip op., at 8) (quoting *Whitney Nat. Bank in Jefferson Parish* v. *Bank of New Orleans & Trust Co.*, 379 U. S. 411, 420 (1965)).

Second, even if a claim would not benefit from agency expertise, we nonetheless consider whether the claim is legally or factually related to the type of dispute the agency is authorized to hear.  If so, the claim may be channeled through the administrative process to guard against claim-splitting, which could involve redundant analysis of overlapping issues of law and fact.  But for claims that fall outside the agency's expertise and are "wholly collateral" to the type of dispute the agency is authorized to hear, the interest in requiring unified administrative review is considerably reduced.  *Thunder Basin*, *supra*, at 212 (internal quotation marks omitted); see also *Free Enterprise Fund*, *supra*, at ___ – ___ (slip op., at 8–10).

## II

The CSRA was enacted to "provide the people of the United States with a competent, honest, and productive Federal work force reflective of the Nation's diversity, and to improve the quality of public service."  §3(1), 92 Stat. 1112.  To that end, the Act created an "integrated scheme of administrative and judicial review [of personnel actions], designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration."  *United States* v. *Fausto*, 484 U. S. 439, 445 (1988).

Chapter 75 of Title 5 sets forth detailed procedures for adverse actions taken against certain covered employees "for such cause as will promote the efficiency of the service."  5 U. S. C. §7513(a).  When an agency takes such an action, it must provide the employee with advance written notice of the action and the specific reasons for it, give the employee an opportunity to respond, allow the employee to be represented by an attorney, and provide the employee

Alito, J., dissenting

with a final written decision. See §§7513(b)(1)–(4). Following these internal agency procedures, an aggrieved employee may appeal to the Merit Systems Protection Board. §7513(d).

The Board's mission is "to ensure that Federal employees are protected against abuses by agency management, that Executive branch agencies make employment decisions in accordance with the merit system principles, and that Federal merit systems are kept free of prohibited personnel practices." Merit Systems Protection Board, An Introduction to the Merit Systems Protection Board 5 (1999). The Board adjudicates employment disputes in accordance with applicable federal laws and regulations, including the "[m]erit system principles" and "[p]rohibited personnel principles" identified in §§2301, 2302. After the Board renders a decision, the United States Court of Appeals for the Federal Circuit has exclusive jurisdiction on appeal. See §§7703(a)(1), (b)(1); 28 U. S. C. §1295(a)(9).

The parties agree that petitioners are covered employees who may file an appeal to the Board protesting their removal from federal employment. The parties also agree, however, that the Board lacks authority to adjudicate claims like those asserted by petitioners, which attack the validity of a federal statute as a facial matter. As this Court has noted, "[a]djudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." *Thunder Basin, supra*, at 214 (alteration in original; internal quotation marks omitted). The Board itself has consistently taken the position that it lacks "authority to determine the constitutionality of statutes." *Malone* v. *Department of Justice*, 14 MSPR 403, 406 (1983) (citing *Montana Ch. of Assn. of Civilian Technicians, Inc.* v. *Young*, 514 F. 2d 1165, 1167 (CA9 1975)). Thus, the Board's own self-described role in the administrative process is simply to apply the relevant statutes as written,

without addressing any facial challenges to the validity of
those statutes.

## III

There is no basis for the majority's conclusion that
petitioners must file their constitutional challenges be-
fore the Board instead of a federal district court. Congress
has not expressly curtailed the jurisdiction of the federal
courts to consider facial constitutional claims relating to
federal employment, and no such limitation can be fairly
discerned from the CSRA. Not only are petitioners' claims
"wholly collateral to [the CSRA's] review provisions and
outside the agency's expertise," *Thunder Basin*, 510 U. S.,
at 212 (internal quotation marks omitted), but the Board
itself admits that it is completely powerless to consider the
merits of petitioners' arguments. In short, neither effi-
ciency nor agency expertise can explain why Congress
would want the Board to have exclusive jurisdiction over
claims like these. To the contrary, imposing a scheme of
exclusive administrative review in this context breeds
inefficiency and creates a procedural framework that is
needlessly vexing.

## A

Petitioners argue that registration for the military
draft violates the Equal Protection and Bill of Attainder
Clauses. These facial constitutional arguments are entirely
outside the Board's power to decide, and they do not re-
motely implicate the Board's administrative expertise.
They have nothing to do with the statutory rules of federal
employment, and nothing to do with any application of the
"merit system principles" or the "prohibited personnel
practices" that the Board administers.

Petitioners' constitutional claims also have no relation
to any of the facts that might be relevant to a proceeding
before the Board. The Board typically addresses factual

ALITO, J., dissenting

issues pertaining to the specific circumstances in which employee grievances arise.  For example: Why was a particular employee removed from federal employment?  Does the employer have a sound, nonprohibited basis for the employment action in question?  See, *e.g., Davis* v. *Department of Veterans Affairs*, 106 MSPR 654, 657–658 (2007).

By contrast, petitioners' claims involve general factual issues pertaining to the facial constitutionality of the military draft.  The equal protection question is whether men and women are sufficiently different to justify disparate treatment under the Selective Service Act.  *Rostker* v. *Goldberg*, 453 U. S. 57, 78 (1981).  The factual record that petitioners wish to develop would address issues of gender difference that might be considered relevant to military service.  See Brief for Petitioners 48 (alleging that "women's role in the military has changed dramatically in the past thirty years").  Likewise, under the Bill of Attainder Clause, the key question is whether requiring draft registration as a condition of federal employment amounts to the singling out of a particular person or group for punishment without trial.  See *Nixon* v. *Administrator of General Services*, 433 U. S. 425, 468–469.  Whatever the relevant facts may be on either claim, it is clear that they can have no conceivable bearing on any matter the Board is authorized to address.

B

Administrative agencies typically do not adjudicate facial constitutional challenges to the laws that they administer.  Such challenges not only lie outside the realm of special agency expertise, but they are also wholly collateral to other types of claims that the agency is empowered to consider.  When "the administrative appeals process does not address the kind of . . . constitutional claims" at issue, we cannot infer that Congress intended to "limit[t]

Alito, J., dissenting

judicial review of these claims to the procedures set forth in [the statutory scheme].”   *McNary* v. *Haitian Refugee Center, Inc.*, 498 U. S. 479, 493 (1991).

Several other cases confirm this basic principle.  In *Free Enterprise Fund*, for example, the plaintiffs were not required to pursue their constitutional claims through the Public Accounting Company Oversight Board, because they were challenging the very existence of the Board itself.  561 U. S., at ___ – ___ (slip op., at 8–10).  Likewise, in *Johnson* v. *Robison*, 415 U. S. 361, 373–374 (1974).  Where petitioners brought claims “challenging the constitutionality of laws providing benefits,” the Court held that these claims were not precluded by a statute creating exclusive administrative review over how those benefits were administered.  And in *Mathews* v. *Eldridge,* 424 U. S. 319, 327–332 (1976), we held that although a party challenging the denial of statutory benefits was generally required to proceed through the statutory process of administrative review, a constitutional challenge to the administrative process itself could still be brought directly in federal court.

The present case follows the same pattern: Petitioners are challenging the facial validity of a law that the Board is bound to apply to them, and so it makes little sense for them to seek review before the Board.

The wholly collateral nature of petitioners’ claims makes them readily distinguishable from claims that this Court has held to be impliedly excluded from the original jurisdiction of the federal courts.  In *Fausto*, for example, we held that the CSRA precluded a statutory Back Pay Act claim involving a dispute over whether an employee had engaged in unauthorized use of a Government vehicle.  484 U. S., at 455.  The plaintiff in that case did not challenge the constitutional validity of the applicable legal framework, but argued instead that the framework had been improperly applied to him.  He argued that he had

been wrongfully suspended from work, and that he was entitled to backpay as a result. *Id.,* at 440. For that type of fact-specific personnel dispute, we determined, Congress had intended for the CSRA's comprehensive administrative scheme to provide the exclusive avenue of relief. *Id.,* at 455.

Similarly, in *Bush* v. *Lucas*, 462 U. S. 367 (1983), we declined to allow a claim under *Bivens* v. *Six Unknown Fed. Narcotics Agents*, 403 U. S. 388 (1971), brought by an employee seeking money damages for an alleged "retaliatory demotion or discharge because he ha[d] exercised his First Amendment rights." 462 U. S., at 381. Although the claim was constitutional in nature, we noted that it "ar[o]se out of an employment relationship that is governed by comprehensive procedural and substantive provisions" that had been enacted by Congress. *Id.,* at 368. The employee was pursuing an as-applied challenge that depended on the case-specific facts of why he had been fired. The gravamen of the employee's claim was that he had been "unfairly disciplined for making critical comments about [his agency]." *Id.,* at 386. Under the statutory scheme that Congress had created, the employee could have pursued a very similar statutory claim for wrongful removal within the administrative process. *Id.,* at 386–388. Under these circumstances, we found that Congress did not intend to allow a duplicative nonstatutory claim for damages based on the same set of underlying facts.

Finally, the majority's reliance on *Thunder Basin* is entirely misplaced. See *ante*, at 13. In that case, we found that a statutory scheme impliedly precluded a pre-enforcement challenge brought by a mining company seeking to enjoin an order issued by the Mine Safety and Health Administration. 510 U. S., at 205. Importantly, the plaintiff company was seeking review of purely statutory claims that were reviewable in the first instance by the administrative commission that Congress had estab-

ALITO, J., dissenting

lished. The only constitutional issue was a matter of timing: The company argued that it had a due process right to immediate judicial review of its statutory claims, because it would suffer irreparable harm if it were forced to wait until after the agency initiated an enforcement action. *Ibid.* The Court disagreed, holding that the statutory scheme was "consistent with due process" even though it provided for only postenforcement review. *Id.,* at 218. Thus, the Court rejected the company's constitutional claim "not on preclusion grounds but on the merits." *Id.,* at 219 (SCALIA, J., concurring in part and concurring in judgment). The heart of the preclusion analysis was that the company could not use a preenforcement challenge to obtain judicial review of statutory claims that Congress had clearly intended to channel into administrative review.*

C

By requiring facial constitutional claims to be filed before the Board, the majority's holding sets up an odd sequence of procedural hoops for petitioners to jump

———————

*The majority contends that the petitioner in *Thunder Basin* really had two distinct constitutional claims. The primary constitutional claim was a "due process challenge to a statute that permitted a regulatory agency, before a hearing, to immediately fine the petitioner for noncompliance with the statute." *Ante,* at 14, n. 6. On top of this, according to the majority, the petitioner also had a separate constitutional claim, which asserted that precluding initial judicial review of the first constitutional claim would violate due process. In the majority's view, only the latter claim was rejected on the merits. But this hairsplitting makes no difference. The entire thrust of the petitioner's constitutional argument was simply that proceeding through the statutory scheme would make meaningful judicial review impossible. The Court rejected that argument, effectively disposing of any constitutional infirmity that the petitioner alleged. Unlike in the present case, there was no freestanding constitutional claim attacking the validity of the statutory framework on substantive rather than procedural grounds.

ALITO, J., dissenting

through.  As the Government concedes, the Board is pow-
erless to adjudicate facial constitutional claims, and so
these claims cannot be addressed on the merits until they
reach the Federal Circuit on appeal.  As a result, the
Federal Circuit will be forced to address the claims in the
first instance, without the benefit of any relevant factfind-
ing at the administrative level.  This is a strange result,
because "statutes that provide for only a single level of
judicial review in the courts of appeals are traditionally
viewed as warranted only in circumstances where district
court factfinding would unnecessarily duplicate an ade-
quate administrative record."  *McNary*, 498 U. S., at 497
(internal quotation marks omitted).

The Government admits that the absence of first-tier
factfinding might very well result in "the initial record"
being "insufficient to permit meaningful consideration of
a constitutional claim," but suggests that the court could
always "remand the case to the [Board] for further factual
development."  Brief for Respondents 41.  The majority
accepts this solution, *ante,* at 15, but it is hard to see how
it will work in practice.  Without any authority to decide
merits issues, the Board may find it difficult to adjudicate
disputes about the relevancy of evidence sought in discov-
ery.  Nor will the Board find it easy to figure out which
facts it must find before sending the case back to the
Federal Circuit.

Even if these problems can be overcome, that will not
resolve the needless complexity of the majority's approach.
According to the majority, petitioners should file their
claims with the Board, which must then kick the claims
up to the Federal Circuit, which must then remand the
claims back to the Board, which must then develop the
record and send the case back to the Federal Circuit,
which can only then consider the constitutional issues.

To be sure, this might be sufficient to afford "meaningful
review" of petitioners' claims, *ante,* at 16–17, but that is

not the only consideration. The question is whether it is "fairly discernible" that Congress intended to impose these pinball procedural requirements instead of permitting petitioners' claims to be decided in a regular lawsuit in federal district court. And why would it? As already noted, the benefits of preventing claim-splitting are considerably reduced with respect to facial constitutional claims that are wholly collateral to an administrative proceeding. Because collateral constitutional claims have no overlap with the issues of law and fact that will pertain to the administrative proceeding, allowing the constitutional claims to be adjudicated separately before a district court does not invite wasteful or duplicative review. It simply allows the district court to develop the factual record and then provide a first-tier legal analysis, thereby enhancing both the quality and efficiency of appellate review.

To the extent that there is some need to prevent claim-splitting, that purpose is already served by ordinary principles of claim preclusion. Plaintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary "to avoid duplicative litigation." *Colorado River Water Conservation Dist.* v. *United States*, 424 U. S. 800, 817 (1976); *Stone* v. *Department of Aviation*, 453 F. 3d 1271, 1278 (CA10 2006) ("A plaintiff's obligation to bring all related claims together in the same action arises under the common-law rule of claim preclusion prohibiting the splitting of actions"). See also 18 C. Wright et al., Federal Practice and Procedure §4406, p. 40 (2d ed. 2002, Supp. 2011) (discussing "principles of 'claim splitting' that are similar to claim preclusion, but that do not require prior judgment"). Thus, if an aggrieved employee goes to a district court with claims that would duplicate the factfinding or legal analysis of a separate Board proceeding, the district court would be free

ALITO, J., dissenting

to dismiss the case.

The majority suggests that its approach will allow the Board to resolve some cases on nonconstitutional grounds, thus avoiding needless adjudication of constitutional issues. See *ante,* at 18. But achieving that goal does not require the blunt instrument of jurisdictional preclusion. District courts have broad discretion to manage their dockets, including the power to refrain from reviewing a constitutional claim pending adjudication of a nonconstitutional claim that might moot the case. See *Kerotest Mfg. Co.* v. *C-O-Two Fire Equipment Co.,* 342 U. S. 180, 183 (1952) (acknowledging the equitable discretion of courts, in furtherance of "[w]ise judicial administration" and "conservation of judicial resources," to stay proceedings to prevent "two litigations where one will suffice" (internal quotation marks omitted)). In short, the district courts are well equipped to guard against piecemeal litigation without any help from the majority's holding.

Finally, the majority contends that channeling facial constitutional claims through the Board is necessary to provide "clear guidance about the proper forum for the employee's claims at the outset of the case." *Ante,* at 11. Because it can be hard to tell the difference between facial and as-applied challenges, the majority argues, it is less confusing simply to require that all claims must be brought before the Board. This is a red herring. Labels aside, the most sensible rule would be to allow initial judicial review of constitutional claims that attack the validity of a statute based on its inherent characteristics, not as a result of how the statute has been applied. That line is bright enough, and the distinction is already one that the Board must draw based on its own determination that it can hear some as-applied challenges but lacks "authority to determine the constitutionality of statutes." *Malone,* 14 MSPR, at 406.

### IV

The presumptive power of the federal courts to hear constitutional challenges is well established. In this case, however, the majority relies on a very weak set of inferences to strip the courts of their original jurisdiction over petitioners' claims. Because I believe Congress would have been very surprised to learn that it implied this result when it passed the CSRA, I respectfully dissent.